[Cite as *State v. Ward*, 2020-Ohio-465.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                    :

    Plaintiff-Appellee,                  :               No. 19AP-266
                                                                          (C.P.C. No. 18CR-774)
v.                                                     :
                                                                      (REGULAR CALENDAR)
Richard G. Ward,                              :

    Defendant-Appellant.              :

---

D E C I S I O N

Rendered on February 11, 2020

---

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Barbara A. Farnbacher*, for appellee.

**On brief:** *Anzelmo Law*, and *James A. Anzelmo*, for appellant.

---

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} Defendant-appellant, Richard G. Ward, appeals from a judgment of the Franklin County Court of Common Pleas convicting him of felonious assault, with a repeat violent offender specification. For the following reasons, we affirm.

**I. Facts and Procedural History**

{¶ 2} In February 2018, the Franklin County Grand Jury indicted Ward on one count of felonious assault in violation of R.C. 2903.11, a second-degree felony, and one count of attempted murder in violation of R.C. 2923.02, a first-degree felony. Both counts had an attached repeat violent offender specification pursuant to R.C. 2941.149. Ward pleaded not guilty. In February 2019, the case proceeded to a jury trial as to the felonious

assault and attempted murder charges, and a bench trial as to the repeat violent offender specifications. As pertinent to this appeal, the following evidence was adduced at trial.

{¶ 3} Jordan Henley testified that, on November 16, 2017, he and his friends Chad Stroud and Cody (last name unknown) visited his sister Shamone (last name unknown) at her apartment on Ryan Avenue in Columbus. After hanging out for a while, Henley and his friends decided to drive to a convenience store to buy some cigarettes and pop. When they returned to the apartment, Henley and his friends saw Savon Clay, the father of Shamone's two children, fighting with someone, later identified as Ward. Stroud and Cody exited their vehicle and tried to stop the fight, but Henley did not get out of the vehicle because he feared for his own safety. Henley did not see the start of the fight; however, when it ended, he saw stab wounds on Clay's chest and abdomen. Ward and a woman got into a vehicle and drove away.

{¶ 4} Stroud testified that he, Cody, and Henley were standing near a vehicle outside Shamone's apartment on November 16, 2017, when they saw Ward throw a punch at Clay to start a fight. "Savon started getting beat up," and the "dude * * * was pounding on him." (Tr. Vol. I at 68, 69.) When Stroud tried to intervene to help Clay by pulling Ward's arm, he was struck in his left eye. Stroud stepped back and saw Clay bleeding from gruesome stab wounds: "His intestines were hanging out." (Tr. Vol. I at 73.) Stroud acknowledged that he was under the influence of marijuana and cocaine on the night of the incident and that he had been convicted of felony drug possession in 2016. Stroud characterized Clay as being drunk that night.

{¶ 5} Clay testified regarding the fight between himself and Ward. In November 2017, Clay was living with his mother, but he would stay with the mother of his children, Shamone, on the weekends. A few days before the stabbing, Clay had met Ward, who went by the name "Black" and was staying with Shamone's neighbor, Jack (last name unknown). During the evening of November 16, 2017, Clay was at Shamone's apartment eating pizza with her, two of his children, Henley, and Henley's two friends Stroud and Cody. At some point in time, Clay, Henley, Stroud, and Cody left to go to the store to buy cigarettes. Before leaving for the store, Jack told Clay that Ward said to stop running in and out of the apartment building. Clay said to tell Ward that Ward needed to talk to him directly about any issue Ward had with him.

{¶ 6} When the four returned from the store, Ward was waiting outside the apartment building for Clay, who was "a little tipsy" from drinking beer. (Tr. Vol. I at 105.) The two got into an argument, and Ward hit Clay, causing him to fall. Clay got up to defend himself and was able to punch Ward at least once, but Ward stabbed him and then left the scene. Despite losing blood and seeing his intestines "hanging out of [his] side," Clay tried not to panic and waited for an ambulance to arrive. (Tr. Vol. I at 110.) Clay was not carrying any type of weapon that night, and he later identified Ward as the man who stabbed him. He spent approximately three weeks in the hospital healing from his stab wounds to his face, abdomen, and chest. Also, because of the stabbings, his lungs were punctured, and doctors had to take out his intestines, clean them, and put them back. It took approximately two months for Clay to feel somewhat normal, but he continued to have back pain and migraine headaches.

{¶ 7} Todd Dean, a forensic nurse for Mount Carmel Health Systems, testified that, after the stabbing, Clay was taken to Mount Carmel West Hospital and rushed into surgery as a Level I trauma patient because of his life-threatening injuries. Dean took pictures of Clay's extensive injuries the next day.

{¶ 8} Columbus Police Detective Ronald Lemmon, and his partner Detective Tony Richardson, responded to the scene of the stabbing. Detective Lemmon took photographs but did not interview any witnesses at the scene, and no physical evidence, such as a weapon, was collected. Later that night, the detectives went to the hospital and spoke with Clay, who told them what happened. Approximately 12 days later, the detectives interviewed Clay again and showed him a photograph array of 6 individuals. Clay identified Ward as the man who had stabbed him, saying, "This is the guy who tried to kill me." (Tr. Vol. I at 238.)

{¶ 9} Franklin County Assistant Prosecuting Attorney Elizabeth Geraghty testified outside the presence of the jury. She testified that, in April 2007, Ward was convicted of robbery, a second-degree felony, with a firearm specification. Ward was sentenced to five years in prison for the offense.

{¶ 10} Ward provided the following testimony on his own behalf. He did not know Clay before the night of the incident. Ward and his girlfriend had been staying at the apartment with his coworker Jack because their home had roof damage. When Ward

arrived at the apartment at approximately 9:30 p.m. on November 16, 2017, he noticed there was a party at Shamone's apartment. Clay, who was drunk, knocked on Jack's door and came in the apartment uninvited. Clay left and then came back to go somewhere with Jack. Ward asked Jack to tell the others not to come into Jack's apartment because they were drunk and getting aggressive. When Jack and the others returned, Ward decided to go to the store. He stepped outside the apartment building and saw Clay arguing with Shamone. Ward began to walk by, but Clay confronted him and struck him in the face. Ward responded by pushing Clay, and the two began to fistfight. Henley and Stroud became involved and fought Ward. One of the men grabbed Ward's right arm, and they tried to pull him to the ground. Ward was able to retrieve a box cutter from his pocket and expose the blade. As Ward was getting hit by others, he began to step back and swing the knife. He feared for his life. Ward's girlfriend yelled something, startling the others, which ended the fight. Ward and the woman got into a vehicle and drove away as the others threw stuff at the vehicle. When Ward was later arrested, he denied knowing anything about what had happened on Ryan Avenue on November 16, 2017.

{¶ 11} The jury found Ward not guilty on the attempted murder count, but guilty on the felonious assault count. The trial court found Ward guilty of the repeat violent offender specification as to the felonious assault count. The court sentenced Ward to eight years in prison for the felonious assault conviction, and six years in prison for the repeat violent offender specification, to be served consecutively.

{¶ 12} Ward timely appeals.

## II. Assignments of Error

{¶ 13} Ward assigns the following errors for our review:

> [1.] The trial court improperly required Ward to prove self-defense, in violation of the Second, Fifth and Fourteenth Amendments to the United States Constitution.
>
> [2.] There is insufficient evidence behind Ward's conviction for felonious assault, in violation of the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution and Sections 1 & 16, Article I of the Ohio Constitution.
>
> [3.] Ward's conviction for felonious assault is against the manifest weight of the evidence in violation of the Due Process

Clause of the Fifth and Fourteenth Amendments to the United State Constitution and Sections 1 & 16, Article I of the Ohio Constitution.

[4.] The trial court unlawfully ordered Ward to serve consecutive sentences, in violation of his rights to due process, guaranteed by Section 10, Article I of the Ohio Constitution and the Fifth and Fourteenth Amendments to the United States Constitution.

[5.] Ward received ineffective assistance of counsel, in violation of the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution.

## III. Discussion

### A. First Assignment of Error – Self-Defense Instruction

{¶ 14} In his first assignment of error, Ward contends the trial court erred in requiring him to prove he acted in self-defense. This assignment of error lacks merit.

{¶ 15} On the date Ward committed the felonious assault, November 16, 2017, and at the time of his trial in February 2019, R.C. 2901.05(A) provided in pertinent part as follows: "The burden of going forward with the evidence of an affirmative defense, and the burden of proof, by a preponderance of the evidence, for an affirmative defense, is upon the accused." The trial court instructed the jury on the issue of self-defense consistent with this statute. Following trial, on March 28, 2019, R.C. 2901.05 was amended to provide that the prosecution now has to prove beyond a reasonable doubt that the accused did not act in self-defense. *See* Am.Sub.H.B. No. 228. This change was not retroactive; thus, the former version of R.C. 2901.05(A) applied. *See State v. Koch*, 2d Dist. No. 28000, 2019-Ohio-4099, ¶ 103 (accused "not entitled to retroactive application of the burden-shifting changes made by the legislature to Ohio's self-defense statute, R.C. 2901.05, as a result of H.B. 228").

{¶ 16} Ward challenges the constitutionality of former R.C. 2901.05(A)'s placement of the burden of proving self-defense on the accused. He acknowledges the United States Supreme Court, in *Martin v. Ohio*, 480 U.S. 228, 233-34 (1987), upheld the constitutionality of former R.C. 2901.05's requirement that an accused prove self-defense as an affirmative defense. He argues, however, that the Supreme Court's more recent decision in *Dist. of Columbia v. Heller*, 554 U.S. 570 (2008), mandates a finding that it was

unconstitutional for the trial court to require him to prove self-defense. We disagree. In *Heller*, the Supreme Court held that a "ban on handgun possession in the home violates the Second Amendment, as does its prohibition against rendering any lawful firearm in the home operable for the purpose of immediate self-defense." *Id.* at 635. Even though the Supreme Court in *Heller* recognized and discussed the right of self-defense in reaching that holding, nothing in that decision addressed the burden of proof regarding self-defense. *State v. Glover*, 1st Dist. No. C-180572, 2019-Ohio-5211, ¶ 23. Thus, Ward's constitutionality argument is unpersuasive. *See*, *e.g.*, *State v. Lechner*, 4th Dist. No. 19CA3, 2019-Ohio-4071, ¶ 37 (finding that the "reliance upon *Heller* for an argument that the applicable version of Ohio's self-defense statute was unconstitutional [is] misplaced").

{¶ 17} Because the trial court did not err in requiring Ward to prove self-defense, we overrule his first assignment of error.

### B. Second Assignment of Error – Sufficiency of the Evidence

{¶ 18} Ward's second assignment of error asserts his felonious assault conviction was not supported by sufficient evidence. We disagree.

{¶ 19} Whether there is legally sufficient evidence to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Sufficiency is a test of adequacy. *Id.* The relevant inquiry for an appellate court is whether the evidence presented, when viewed in a light most favorable to the prosecution, would allow any rational trier of fact to find the essential elements of the crime proven beyond a reasonable doubt. *State v. Mahone*, 10th Dist. No. 12AP-545, 2014-Ohio-1251, ¶ 38, citing *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, ¶ 37. "[I]n a sufficiency of the evidence review, an appellate court does not engage in a determination of witness credibility; rather it essentially assumes the state's witnesses testified truthfully and determines if that testimony satisfies each element of the crime." *State v. Bankston*, 10th Dist. No. 08AP-668, 2009-Ohio-754, ¶ 4.

{¶ 20} Ward was convicted of committing felonious assault in violation of R.C. 2903.11, which provides that no person shall knowingly cause serious physical harm to another or cause, or attempt to cause, physical harm to another by means of a deadly weapon. Ward argues that the evidence did not support the felonious assault conviction because he acted in self-defense. He also seems to allege the evidence did not establish that he acted with the requisite mental element of knowingly. He further argues there was

insufficient evidence that he used a deadly weapon against Clay. According to him, the box cutter knife he used to stab Clay was not a deadly weapon. He asserts that because the knife was not designed or specifically adapted for use as a weapon, it was not a deadly weapon. These arguments fail.

{¶ 21} Ward's sufficiency argument based on his asserted self-defense is unavailing. The "due process 'sufficient evidence' guarantee does not implicate affirmative defenses, because proof supportive of an affirmative defense cannot detract from proof beyond a reasonable doubt that the accused had committed the requisite elements of the crime." *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, ¶ 37. A sufficiency review is applied to the substantive elements of the crime as state law defines them. *Jackson v. Virginia*, 443 U.S. 307 (1979). Thus, Ward's reliance on his self-defense testimony is not relevant to the analysis of whether there was sufficient evidence to support the substantive elements of felonious assault.

{¶ 22} We find that evidence in the record supported the jury's verdict that Ward committed felonious assault. It is undisputed that on the night of November 16, 2017, Ward and Clay engaged in an altercation. Ward admitted to swinging a box cutter knife at Clay during the fight. Clay's testimony and the photographs of his body admitted into evidence demonstrated the severity of the injuries he sustained from Ward's use of the knife. He had stab wounds to his face, chest, and abdomen. These gashes at multiple locations on his body required emergency surgery to stop the bleeding and repair the wounds. The injury to Clay's abdomen was so severe that part of his intestine was outside his body immediately after the stabbing. This evidence reasonably demonstrated that Ward was aware that his conduct would probably cause serious physical harm to Clay.

{¶ 23} Moreover, evidence showed that Ward used a deadly weapon against Clay. For the purpose of R.C. 2903.11, a "deadly weapon" is defined as "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." Not only did the box cutter knife have the potential to be used as a weapon, but evidence demonstrated that Ward did use the knife as a weapon to inflict serious physical harm on Clay. Thus, we reject Ward's contention that the box cutter knife he used was not a deadly weapon.

{¶ 24} Because Ward's felonious assault conviction was supported by sufficient evidence, we overrule his second assignment of error.

### C. Third Assignment of Error – Manifest Weight of the Evidence

{¶ 25} In his third assignment of error, Ward contends his felonious assault conviction was against the manifest weight of the evidence.  We are unpersuaded.

{¶ 26} Determinations of credibility and weight of the testimony are primarily for the trier of fact.  *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus.  The jury, or the court in a bench trial, may take note of inconsistencies at trial and resolve them accordingly, "believ[ing] all, part, or none of a witness's testimony."  *State v. Raver*, 10th Dist. No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67 (1964).  Therefore, "[w]hen a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a ' "thirteenth juror" ' and disagrees with the factfinder's resolution of the conflicting testimony."  *Thompkins* at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982); *see State v. Tate*, 140 Ohio St.3d 442, 2014-Ohio-3667, ¶ 20 ("a prerequisite for any reversal on manifest-weight grounds is conflicting evidence").  However, an appellate court considering a manifest weight challenge "may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."  *State v. Harris*, 10th Dist. No. 13AP-770, 2014-Ohio-2501, ¶ 22, citing *Thompkins* at 387.  Appellate courts should reverse a conviction as being against the manifest weight of the evidence only in the most " 'exceptional case in which the evidence weighs heavily against the conviction.' "  *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶ 27} Ward asserts his conviction for felonious assault was against the manifest weight of the evidence because he acted in self-defense.  According to his testimony, he feared for his life, and only swung the box cutter knife at Clay because he thought he was getting assaulted by three men.  Ward acknowledges Clay's testimony refuted his, but argues Clay was not credible because he lied about not smoking marijuana, and Clay's

memory was compromised because he had been drinking alcohol on the night of the incident.

{¶ 28} Ultimately, the jury had to decide whether to believe the account of the incident given at trial by the state's witnesses or by Ward. That is, it was within the province of the jury to resolve the conflicts in the testimony about the fight between Ward and Clay, and to find that Ward did not act in self-defense. For example, in resolving this conflict, it was for the jury to decide whether the testimony of Clay, Stroud, or Henley was compromised by anything they had ingested that night. The jury also could assess Ward's motivation to lie about his conduct. In view of its verdict, the jury did not believe Ward's account. Upon reviewing the entire record, we find that the jury's resolution of the competing testimony was not against the manifest weight of the evidence. This not an exceptional case in which the evidence weighs heavily against the conviction.

{¶ 29} Accordingly, we overrule Ward's third assignment of error.

### D. Fourth Assignment of Error – Consecutive Sentences

{¶ 30} Ward argues in his fourth assignment of error that the trial court erred in imposing consecutive sentences. We disagree.

{¶ 31} "An appellate court will not reverse a trial court's sentencing decision unless the evidence is clear and convincing that either the record does not support the sentence or that the sentence is contrary to law." *State v. Robinson*, 10th Dist. No. 15AP-910, 2016-Ohio-4638, ¶ 7, citing *State v. Chandler*, 10th Dist. No. 04AP-895, 2005-Ohio-1961, ¶ 10; R.C. 2953.08(G)(2). Ward contends the trial court did not properly apply the statutory sentencing guidelines and therefore its imposition of consecutive sentences was contrary to law. In particular, he argues the trial court did not make all of the necessary findings under R.C. 2929.14(B)(2)(a) before imposing consecutive sentences. The trial court sentenced Ward to eight years in prison as to the felonious assault count and six years in prison as to the repeat violent offender specification attached to Count 1. It ordered those sentences to be served consecutively.

{¶ 32} R.C. 2929.14(B)(2)(e) requires a trial court to "state its findings explaining the imposed sentence" when it imposes a sentence pursuant to R.C. 2929.14(B)(2)(a) or (b). R.C. 2929.14(B)(2)(a) addresses the discretionary imposition of an additional prison term for a repeat violent offender specification, and R.C. 2929.14(B)(2)(b) addresses the

mandatory imposition of an additional prison term for a repeat violent offender specification.  Here, the imposition of the additional prison term for the repeat violent offender specification was discretionary and therefore imposed pursuant to R.C. 2929.14(B)(2)(a), which states as follows:

> (a) If division (B)(2)(b) of this section does not apply, the court may impose on an offender, in addition to the longest prison term authorized or required for the offense or, for offenses for which division (A)(1)(a) or (2)(a) of this section applies, in addition to the longest minimum prison term authorized or required for the offense, an additional definite prison term of one, two, three, four, five, six, seven, eight, nine, or ten years if all of the following criteria are met:
>
> (i) The offender is convicted of or pleads guilty to a specification of the type described in section 2941.149 of the Revised Code that the offender is a repeat violent offender.
>
> (ii) The offense of which the offender currently is convicted or to which the offender currently pleads guilty is aggravated murder and the court does not impose a sentence of death or life imprisonment without parole, murder, terrorism and the court does not impose a sentence of life imprisonment without parole, any felony of the first degree that is an offense of violence and the court does not impose a sentence of life imprisonment without parole, or any felony of the second degree that is an offense of violence and the trier of fact finds that the offense involved an attempt to cause or a threat to cause serious physical harm to a person or resulted in serious physical harm to a person.
>
> (iii) The court imposes the longest prison term for the offense or the longest minimum prison term for the offense, whichever is applicable, that is not life imprisonment without parole.
>
> (iv) The court finds that the prison terms imposed pursuant to division (B)(2)(a)(iii) of this section and, if applicable, division (B)(1) or (3) of this section are inadequate to punish the offender and protect the public from future crime, because the applicable factors under section 2929.12 of the Revised Code indicating a greater likelihood of recidivism outweigh the applicable factors under that section indicating a lesser likelihood of recidivism.
>
> (v) The court finds that the prison terms imposed pursuant to division (B)(2)(a)(iii) of this section and, if applicable,

division (B)(1) or (3) of this section are demeaning to the seriousness of the offense, because one or more of the factors under section 2929.12 of the Revised Code indicating that the offender's conduct is more serious than conduct normally constituting the offense are present, and they outweigh the applicable factors under that section indicating that the offender's conduct is less serious than conduct normally constituting the offense.

R.C. 2929.14(B)(2)(a)(i) through (v). "Although imposition of the additional prison term is discretionary, if the trial court chooses to impose the additional term under R.C. 2929.14(B)(2)(a), the sentencing statute requires the additional term to be served 'consecutively to and prior to the prison term imposed for the underlying offense.' " *State v. Harris*, 10th Dist. No. 15AP-683, 2016-Ohio-3424, ¶ 46, quoting R.C. 2929.14(B)(2)(d).

{¶ 33} Ward does not argue the trial court did not make the necessary findings under R.C. 2929.14(B)(2)(a)(i), (ii), or (iii). Ward argues the trial erroneously failed to make the findings under R.C. 2929.14(B)(2)(a)(iv) and (v) before imposing consecutive sentences. However, in *State v. Oller*, 10th Dist. No. 16AP-429, 2017-Ohio-7575, this court clarified that if a trial court in its discretion imposes additional prison time on a repeat violent offender specification, it must make the findings under R.C. 2929.14(B)(2)(a) with the exception that it need not state the findings under R.C. 2929.14(B)(2)(a)(iv) and (v). Thus, the trial court was not required to make the findings set forth in R.C. 2929.14(B)(2)(a)(iv) and (v) before imposing an additional sentence on the repeat violent offender specification, which pursuant to R.C. 2929.14(B)(2)(d), was required to be imposed consecutive to the prison term for the underlying offense. Consequently, we reject Ward's argument that the trial court failed to comply with statutory sentencing guidelines relating to its imposition of consecutive sentences.

{¶ 34} For these reasons, we overrule Ward's fourth assignment of error.

**E. Fifth Assignment of Error – Ineffective Assistance of Trial Counsel**

{¶ 35} In his fifth and final assignment of error, Ward argues he received ineffective assistance of trial counsel. This assignment of error is not well-taken.

{¶ 36} In order to prevail on a claim of ineffective assistance of counsel, Ward must satisfy a two-prong test. First, he must demonstrate that his counsel's performance was deficient. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). This first prong requires Ward to show that his counsel committed errors which were "so serious that counsel was

not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* If Ward can so demonstrate, he must then establish that he was prejudiced by the deficient performance. *Id.* To show prejudice, Ward must establish there is a reasonable probability that, but for his counsel's errors, the result of the trial would have been different. A "reasonable probability" is one sufficient to undermine confidence in the outcome of the trial. *Id.* at 694.

{¶ 37} According to Ward, his trial counsel was deficient in not requesting that the jury be instructed that evidence of his prior conviction only could be used for impeachment. He asserts he was prejudiced because the jury was free to infer that he has a propensity to engage in criminal activity and therefore committed the crime alleged in this case. But the trial court instructed the jury as follows: "Testimony was introduced tending to show that witnesses and the defendant had been convicted of crimes. You may consider this testimony to judge their credibility and the weight to be given to their testimony only." (Tr. Vol. II at 442.) Thus, the trial court expressly instructed the jury that evidence of Ward's prior conviction only could be used for impeachment. And based on this instruction, the jury was implicitly not permitted to consider that evidence to find he has a propensity to commit crimes. Consequently, we reject Ward's contention that his trial counsel was deficient in not requesting a jury instruction concerning his criminal history.

{¶ 38} Therefore, we overrule Ward's fifth assignment of error.

## IV. Disposition

{¶ 39} Having overruled all five of Ward's assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

DORRIAN and BRUNNER, JJ., concur.