[Cite as *State v. Hamrick*, 2012-Ohio-1214.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P. J. |
| Plaintiff-Appellee | : | Hon. Sheila G. Farmer, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 2011CA00041 |
| RYAN LEE HAMRICK | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

NUNC PRO TUNC
PRINTER ERROR PARAGRAPHS 8 & 11

CHARACTER OF PROCEEDING:     Appeal from the Stark County Common
                            Pleas Court Case No. 2009CR2044

JUDGMENT:                   AFFIRMED

DATE OF JUDGMENT ENTRY:     March 19, 2012

APPEARANCES:

For Plaintiff-Appellee:                 For Defendant-Appellant:

KATHLEEN O. TATARSKY                    ANTHONY T. KAPLANIS
Stark County Assistant Prosecutor       701 Courtyard Center
110 Central Plaza, South-Suite 510      116 Cleveland Ave. NW
Canton, Ohio  44702                     Canton, Ohio  44702

*Delaney, J.*

{¶1} On December 31, 2009, the Stark County Grand Jury indicted Defendant-appellant Ryan Hamrick on one count of murder [R.C. 2903.02(A)] with a firearm specification, [R.C. 2941.145]. Said charges arose from the death of Demeris A. Tillman, 30, a resident of East Cleveland, Ohio.

{¶2} Appellant pled not guilty and exercised his right to a jury trial, which commenced on January 19, 2011.

{¶3} At trial, most of the State's physical evidence was undisputed by appellant. On November 19, 2009, Tillman's body was found in a creek beneath a bridge on Moore Avenue, just south of Sherrick Road, in Canton Township, by a township employee inspecting a previous dam removal project. The Stark County Coroner determined Tillman's death was caused by multiple gunshot wounds to the head, trunk and arm.

{¶4} Tillman was killed with a ten millimeter handgun, an uncommon weapon. Five shell casings were found at the scene along with Tillman's cell phone. The cell phone revealed text messages and calls between Tillman and a Jennifer McPherson. The police subsequently located McPherson in West Virginia and questioned her. She implicated appellant, also a resident of West Virginia, as the shooter. Appellant was arrested and initially denied knowledge of or involvement in the death of Tillman. Appellant subsequently admitted to shooting Tillman during an incident that occurred on November 15, 2009. McPherson also was present at the time. However, appellant and McPherson offered divergent versions of the events leading to Tillman's death.

**McPherson's Version**

{¶5} McPherson testified at trial that she knew Tillman through his cousin Jules Covington (also known as Boony), who lived in West Virginia. She had gone with Boony to visit family in Cleveland and met Tillman there. Tillman later traveled to West Virginia and stayed at McPherson's apartment. McPherson subsequently facilitated drug deals between Tillman and appellant in West Virginia.

{¶6} On November 14, 2009, appellant and McPherson drove to Cleveland and eventually picked up Tillman the next day. In Cleveland, Tillman obtained drugs for appellant and he drove back to West Virginia with Appellant and McPherson. Tillman (also known as Pork) was large of stature and sat in the front passenger seat while Appellant drove his father's red Mustang. McPherson sat in the back seat.

{¶7} McPherson testified they stopped at a Walmart in Akron, where "Chore Boy" cleaner and an arrow were purchased to smoke crack cocaine. Store surveillance cameras captured the red Mustang in the parking lot and appellant and Tillman together in Walmart.

{¶8} McPherson stated appellant smoked crack in the car prior to leaving the parking lot. They proceeded toward Canton via Interstate 77. McPherson stated appellant got off the highway and drove to a back road and made her and Tillman get out of the car. Appellant dropped them off at a bridge and told them they couldn't go with him. He drove away but McPherson did not know where he went once he drove from sight. She and Tillman conversed about Christmas shopping and within a minute or two a gunshot rang out. Tillman told her not to get scared because he knew people

in the area where they could go. Appellant drove back and stopped the car. McPherson testified she reached for the passenger door to get in but it was locked. Appellant exited the vehicle and shot Tillman two times. Tillman fell to the ground while holding on to McPherson's shirt and told her to run. Appellant came around the car. He proceeded to again shoot Tillman while McPherson ran away.

{¶9} McPherson testified that appellant then drove after her. He told her to get in the car or he would shoot her. McPherson got back in the car. The two returned to West Virginia. McPherson stated that Tillman did not have a weapon or threaten her with harm at any time.

**Hamrick's Version**

{¶10} Appellant testified on direct examination that he meet Tillman through a friend in West Virginia. Appellant had driven a couple times to Cleveland to pick up or drop off Tillman. On November 14, 2009, he and McPherson drove to pick up Tillman in Cleveland, arriving about 1:00 a.m. The two slept in the car and then picked Tillman up around noon. Drugs were obtained from Tillman's uncle at a gas station. The group then started back to West Virginia. Appellant admitted to stopping at Walmart to get Chore Boy and the arrow. Appellant said it was Tillman's idea to stop in Canton to make another drug transaction. Appellant testified that Tillman told appellant to drop him and McPherson off and then go meet two men in a dark blue Malibu that would be parked up the street. Appellant was to give them some drugs and bring money back to Tillman.

{¶11} Appellant drove up the street. He stated he saw the vehicle parked on the side of the road. He approached the vehicle with drugs in hand but two men got out of

the vehicle and one man held a gun to his head. Appellant stated he tussled with the man. The man dropped the gun and appellant dropped the drugs. Appellant got back to his vehicle but the man shot at him. He drove away and went back to pick up McPherson because he felt she was his responsibility.

{¶12} Appellant testified he felt terrified and set up by Tillman. He stated that Tillman looked surprised and shocked to see him come back. He got out of the car and ordered McPherson back in the car. He stated he pulled his weapon out because Tillman "just kept coming at me". He felt he had nowhere to go and feared for his life, so he shot Tillman, a much larger man than Appellant. Appellant stated he had seen Appellant with a gun before, and on one previous occasion had thought that Tillman was going to rob him. Appellant testified that he was very angry that Tillman had put him in that position.

{¶13} In regards to McPherson, Appellant testified that he pulled up, she started walking to the vehicle, she wasn't running at the time and she did not seem frightened. She got in the car and they returned to West Virginia without saying anything.

{¶14} On cross-examination, Appellant admitted to repeatedly shooting Tillman. He stated he took the loaded weapon with him on the trip. He admitted he originally lied to the police about knowing Tillman, his drug usage and stopping at Walmart. Appellant also admitted that his brother lives on Sherrick Road. Appellant stated he did not see Tillman with a weapon that day, nor did Tillman verbally threaten him. He also admitted to later throwing the murder weapon into a river.

{¶15} When questioned specifically about McPherson, appellant stated she didn't appear to be in any immediate danger when he arrived back and that Tillman had not hurt or threatened her.

{¶16} The jury found appellant guilty as charged. By entry filed February 15, 2011, the trial court sentenced Appellant to life imprisonment (with parole eligibility only after serving fifteen years) on the charge of murder, and three years consecutive on the firearm specification

{¶17} Appellant filed an appeal and this matter is now before this Court for consideration.

{¶18} Appellant raises three assignments of error:

{¶19} "I. THE TRIAL COURT ERRED WHEN IT OVERRULED THE DEFENDANT'S REQUEST TO CHARGE THE JURY ON THE LAW OF THE DEFENSE OF ANOTHER AS IT PERTAINED TO THE DEFENSE OF JENNIFER MCPHERSON.

{¶20} "II. THE TRIAL COURT ERRED WHEN IT DENIED THE DEFENDANT'S REQUEST TO CHARGE THE JURY ON THE LESSER OFFENSE OF VOLUNTARY MANSLAUGHTER.

{¶21} "III. THE TRIAL COURT'S FINDING OF GUILTY OF MURDER WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE.

I.

{¶22} Under his first assignment of error, appellant argues the trial court erred in failing to give a jury instruction for defense of others. The trial court did give a jury instruction for self-defense over the state's objection. However, appellant also

requested a defense of others instruction. Appellant contends that sufficient evidence was established that he was defending McPherson when he shot Tillman, such that an instruction on the defense of others should have been given to the jury. We disagree.

{¶23} The standard of review for failure to give a requested jury instruction is abuse of discretion. *State v. Simmers*, 5th Dist. No. 2009 AP 04 0017, 2009-Ohio-6723, ¶ 26. It is well-established that the trial court will not instruct the jury where there is no evidence to support an issue. *Id.* at ¶ 25, citations omitted. "In reviewing the record to ascertain the presence of sufficient evidence to support the giving of an instruction, an appellate court should determine whether the record contains evidence from which reasonable minds might reach the conclusion sought by the instruction." *Id.*

{¶24} Defense of others is a variation of self-defense. *State v. Moss*, 10th Dist. No. 05AP-610, 2006-Ohio-1647. One who claims the lawful right to act in defense of another must meet the criteria for the affirmative defense of self-defense. *Id.* In other words, a defendant is legally justified in using force only where the person he is aiding would have been justified in using force to defend themselves.

{¶25} Thus, for appellant to be entitled to an instruction on the defense of others he must show: (1) that McPherson was not at fault in creating the situation giving rise to the affray; (2) that she had a bona fide belief that she was in imminent danger of death or great bodily harm and that her only means of escape from such danger was in the use of force; and (3) that she did not violate any duty to retreat or avoid the danger. *State v. Robbins*, 58 Ohio St.2d 74, 388 N.E.2d 755 (1979), paragraph two of the syllabus.

{¶26} The trial court did not allow the instruction because "there are at least two places in the * * * testimony of [Appellant] that Jennifer did not appear in any immediate danger and it did not appear as though she was in * * * here was any problem." T. at 846.

{¶27} Based upon our independent review of the record, we find there was not sufficient evidence to warrant a defense of another instruction. Because appellant stands in the shoes of McPherson, appellant could act with no more force than McPherson would have been justified in using defend herself against assault by Tillman. Here, neither McPherson's or appellant's testimony established that there was a bona fide belief that McPherson was in imminent danger of death or great bodily harm at the hands of Tillman and that the only means of escape was the use of force. Both individuals testified that Tillman did not have a weapon and did not threaten McPherson. Therefore, we find reasonable minds could not reach the conclusion sought by the instruction and the trial court correctly refused to give the instruction.

{¶28} Accordingly, the first assignment of error is overruled.

II.

{¶29} In the second assignment of error, appellant claims the trial court erred in refusing to instruct the jury on the lesser offense of voluntary manslaughter.

{¶30} Voluntary manslaughter is defined in R.C. 2903.03(A):

{¶31} "No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another[.]"

{¶32} Even though voluntary manslaughter is not a lesser-included offense of murder, the Ohio Supreme Court instructs that the test for whether a judge should give a jury instruction on voluntary manslaughter when a defendant is charged with murder is the same test to be applied as when an instruction on a lesser-included offense is sought. *State v. Shane,* 63 Ohio St.3d 630, 632, 590 N.E.2d 272 (1992), citing *State v. Tyler*, 50 Ohio St.3d 24, 37, 553 N.E.2d 576, 592 (1990).

{¶33} A defendant charged with murder is entitled to an instruction on voluntary manslaughter when the evidence presented at trial would reasonably support both an acquittal on the charged crime of murder and a conviction for voluntary manslaughter. *Id.* "We hold that words alone will not constitute reasonably sufficient provocation to incite the use of deadly force in most situations. Rather, in each case, the trial judge must determine whether evidence of reasonably sufficient provocation occasioned by the victim has been presented to warrant a voluntary manslaughter instruction. The trial judge is required to decide this issue as a matter of law, in view of the specific facts of the individual case. The trial judge should evaluate the evidence in the light most favorable to the defendant, without weighing the persuasiveness of the evidence." *Id.* at 637, citing *State v. Wilkins*, 64 Ohio St.2d 382, 388, 415 N.E.2d 303, 308 (1980).

{¶34} In *Shane*, the Ohio Supreme Court re-emphasized that to be reasonably sufficient provocation; the provocation must be *occasioned by the victim* and to be reasonably sufficient, must be *serious*. *Id.* at 637-638. (Emphasis in original).

{¶35} From the evidence presented at trial, it would appear that the anger built up in Appellant's mind was caused by the attempt on his life during the sour drug deal, which he believed to be set up by Tillman. There is no evidence that Tillman actually

provoked appellant into a sudden rage. Although appellant testified that Tillman came at him aggressively, we agree with the trial court's conclusion that this was insufficient serious provocation to cause sudden passion or rage. We find the trial court did not err in refusing appellant's requested instruction on voluntary manslaughter.

{¶36} The second assignment of error is overruled.

III.

{¶37} In the final assignment of error, appellant argues the evidence was insufficient to support the conviction for murder, and that the judgment is against the manifest weight of the evidence.

{¶38} An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶39} In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541.

{¶40} Murder is defined under R.C. 2903.02(A) as the purposeful killing of another.

{¶41} The evidence was undisputed that Tillman died from multiple gunshot wounds inflicted by appellant. Appellant contends on appeal that McPherson's testimony was untrustworthy due to several inconsistencies in her testimony, that she was more acquainted with Tillman and had a motive to lie because Tillman's family had threatened her if they found out she had anything to do with Tillman's death. Appellant argues he was simply a drug user who had no criminal history. Appellant was enraged that Tillman would set him up and feared for his and McPherson's life so he shot Tillman.

{¶42} With respect to appellant's sufficiency of the evidence challenge, we find in reviewing the record in a light most favorable to the state that there was sufficient evidence for the jury to conclude that the essential elements of murder had been proven beyond a reasonable doubt.

{¶43} Appellant's argument that his conviction for murder was against the manifest weight of the evidence relies mainly on attacking the credibility of McPherson. Although this Court sits a 'thirteenth juror' when considering a manifest weight challenge, it must give deference to the jury's determination of the witnesses' credibility. Although McPherson's testimony did contain some inconsistencies with prior statements to police and she appeared to have a closer relationship to Tillman, the jury could consider these factors in evaluating her credibility. We cannot find that the jury clearly lost its way in believing McPherson's testimony over appellant's version of events.

{¶44} Accordingly, appellant's third assignment of error is overruled.

{¶45} For the foregoing reasons, all of appellant's assignments of error are overruled, and the judgment of the Stark County Court of Common Pleas is affirmed.

By: Delaney, J.

Gwin, P.J. and

Farmer, J. concur.

                                   HON. PATRICIA A. DELANEY

                                   HON. W. SCOTT GWIN

                                   HON. SHEILA G. FARMER

[Cite as *State v. Hamrick*, 2012-Ohio-1214.]

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| RYAN LEE HAMRICK | : | |
| | : | |
| Defendant-Appellant | : | Case No. 2011CA00041 |
| | : | |

For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas is affirmed. Costs assessed to appellant.

_____
HON. PATRICIA A. DELANEY

_____
HON. W. SCOTT GWIN

_____
HON. SHEILA G. FARMER