[Cite as *State v. Franklin*, 2020-Ohio-532.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2019-02-026 |
| | : | O P I N I O N |
| - vs - | | 2/18/2020 |
| | : | |
| MALCOLM JAHMAL FRANKLIN, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2017-06-0940


Michael T. Gmoser, Butler County Prosecuting Attorney, John C. Heinkel, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for appellee

Michele Temmel, 6 S. Second Street, #305, Hamilton, Ohio 45011, for appellant


**PIPER, J.**

{¶ 1} Appellant, Malcom Franklin, appeals his conviction in the Butler County Court of Common Pleas for murder with an attached firearm specification.

{¶ 2} Natasha Walton and Ashley Payne went to D.J.'s Nite Spot, a bar located in Middletown, Ohio, where they met Natasha's boyfriend, Julian Johnson, and his friend Jeff Burton. The four eventually went to the bar's outside patio area, which was enclosed by a tall

wooden fence. Soon thereafter, Franklin fired several shots into the enclosed patio from a location outside the fence. Natasha was shot in the stomach, Jeff was shot twice in the leg and ankle, and Julian was shot five times, including once in the neck. While Natasha and Jeff survived the shooting, Julian was pronounced dead at the scene.

{¶ 3} During the ensuing investigation, officers recovered 11 spent shell casings from the area outside the fence. They also located a firearm under Julian's body, though it was unloaded, and its clip was found several feet away from Julian's body. Witnesses identified Franklin as the shooter, and officers began searching for him. When officers located Franklin, he fled on foot, but was soon apprehended. Officers later recovered the firearm Franklin had discarded after the shooting in a park area. Franklin first denied being at D.J.'s on the night of the shooting, but later changed his version of events several times, eventually admitting firing his weapon.

{¶ 4} Franklin told officers he felt threatened by Julian and that he was friends with a woman Julian had repetitively threatened in the past. Franklin admitted to being at the bar and claimed that he tried to end whatever disputes Julian had with him by discussing it with Julian. Franklin claimed that he conversed with Julian through the fence, but began shooting when he heard a noise he believed to be gunfire.

{¶ 5} Franklin was indicted on two counts of murder, seven counts of felonious assault, and two counts of tampering with evidence. The murder and felonious assault charges carried firearm specifications. A jury found Franklin guilty on all charges and specifications, and after merging allied offenses, the trial court sentenced Franklin to 40 years to life in prison. Franklin now appeals his murder conviction, raising the following assignment of error.[1]

---

1. Franklin's appeal does not challenge his other convictions for felonious assault or tampering with evidence.

{¶ 6} THE JURY'S VERDICT WAS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 7} Franklin argues in his sole assignment of error that his murder conviction was against the manifest weight of the evidence because he acted in self-defense on the night of the shooting.

{¶ 8} To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Bradbury*, 12th Dist. Butler No. CA2015-06-111, 2016-Ohio-5091, ¶ 17. An appellate court will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *Id.* at ¶ 18.

{¶ 9} Self-defense is an affirmative defense where the burden of proof is on the accused. *State v. Palmer*, 80 Ohio St.3d 543, 563 (1997).[2] An affirmative defense does not negate the legal adequacy of the state's proof for purposes of submitting it to the jury. *State v. Green*, 12th Dist. Warren No. CA2017-11-161, 2018-Ohio-3991, ¶ 28. Instead, the defense involves an excuse or legal justification for doing an otherwise illegal act. *Id.*

{¶ 10} To establish self-defense in a case where the defendant used deadly force, the defendant must prove: (1) he was not at fault in creating the situation giving rise to the affray,

---

2. Franklin's trial occurred in November 2018. Effective March 28, 2019, the Ohio General Assembly amended the self-defense statute, R.C. 2901.05, in Am.Sub.H.B. 228 ("H.B. 228"). H.B. 228 amended R.C. 2901.05(B)(1) and placed the burden of proof on the state as follows: "the prosecution must prove beyond a reasonable doubt that the accused person did not use the force in self-defense, defense of another, or defense of that person's residence, as the case may be." However, appellants are not entitled to the retroactive application of the burden-shifting changes made to R.C. 2901.05(B)(1). *State v. Debord*, 12th Dist. Clinton No. CA2019-03-003, 2020-Ohio-57, ¶ 14.

(2) he had a bona fide belief he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was the use of deadly force, and (3) he did not violate any duty to retreat or avoid the danger. *State v. Gray*, 12th Dist. Butler No. CA2010-03-064, 2011-Ohio-666, ¶ 43. If a defendant fails to prove any one of these elements, he has failed to demonstrate he acted in self-defense. *State v. Voss*, 12th Dist. Warren No. CA2006-11-132, 2008-Ohio-3889, ¶ 54.

{¶ 11} Franklin was convicted of murder in violation of R.C. 2903.02(B), which provides, "no person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree * * *." Regarding the offense of violence required by the murder statute, the state charged Franklin with felonious assault, a second-degree felony, for causing serious physical harm to the victims by shooting them.

{¶ 12} After reviewing the record, we find that Franklin's murder conviction was not against the manifest weight of the evidence and that he failed to demonstrate self-defense. Regarding the first element, whether Franklin was at fault for creating the affray, the record shows that Franklin went to the bar knowing it was likely that Julian would be there. Franklin testified in his own defense and stated that he drove past the bar multiple times that night and saw how crowded it was. Franklin testified that he knew "everyone was going to be there. Anybody who's anybody was going to be at the club that night." Franklin, who told others that he had "to go do something" at the bar that night, arrived at the bar with a loaded firearm, dressed in black, and according to an eyewitness, he partially obscured his face with a mask. Rather than enter the bar through the front door and spend time therein trying to converse with Julian in public, Franklin waited behind the tall fence until the group entered the patio area and soon thereafter, began firing.

{¶ 13} Ashley testified about the night of the incident and that she never saw Franklin

- 4 -

inside the bar. She recalled that she and the group went into the patio area, and testified that no one approached the fence or had a conversation with Franklin or anyone on the other side of the fence. Instead, and soon after the group entered the patio area, "somebody runs around the back of the fence and just starts shooting."

{¶ 14} Regarding whether Franklin believed he was in imminent danger at the time he shot eleven times into the patio area, Franklin was the only person who claimed that Julian possessed or used a firearm before he was shot and killed. The state's witnesses testified that they did not see Julian with a firearm that evening. Specifically, Natasha, Jeff, and Ashley each testified that they did not see Julian with a firearm that evening and that Julian did not display, use, or shoot a firearm while they were in the patio area. While police recovered a firearm from under Julian's body, it was empty, and the clip was located several feet away from Julian's body. Police did not recover any shell casings from inside the fenced area, and testing indicated that each of the 11 recovered shell casings were fired from Franklin's firearm.

{¶ 15} The state also presented evidence that Franklin first denied even being at the bar on the night of the shooting, and that his story changed multiple times until he finally admitted that he shot into the patio area while trying to converse with Julian. However, Natasha, Jeff, and Ashley each testified that Julian did not approach or converse with Franklin through the fence before being shot.

{¶ 16} Regarding a duty to retreat, there is no indication that Franklin was unable to avoid the situation. Franklin was able to avoid the situation by leaving the area, as he did so after the shooting and was not located by police until the following day. During this time, Franklin had time to dispose of the weapon and return safely to his home.

{¶ 17} Despite Franklin testifying that he feared for his life, and that of his friend, and that he only shot once he heard gunfire, the jury believed the state's witnesses and did not

believe Franklin's testimony that he acted in self-defense on the night of the shooting. We will not disturb the jury's credibility determination, and we do not find that the jury clearly lost its way or that a manifest miscarriage of justice occurred. Having found that Franklin's conviction is supported by the manifest weight of the evidence, we overrule his sole assignment of error.

{¶ 18} Judgment affirmed.

S. POWELL, P.J., and M. POWELL, J., concur.