[Cite as *State v. Lewis*, 2020-Ohio-3762.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2019-07-128 |
| | : | O P I N I O N |
| - vs - | | 7/20/2020 |
| | : | |
| DESHANNON LEWIS, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM BUTLER COUNTY COURT AREA III
Case No. CRB1801337

Michael T. Gmoser, Butler County Prosecuting Attorney, John C. Heinkel, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for appellee

Christopher Paul Frederick, 300 High Street, Suite 550, Hamilton, Ohio 45011, for appellant

**S. POWELL, P.J.**

{¶ 1} Appellant, Deshannon Lewis, appeals his conviction in the Butler County Area III Court for one count of assault following a bench trial. For the reasons outlined below, we affirm.

**Facts and Procedural History**

{¶ 2} On August 24, 2018, Officer Brian Schlensker with the West Chester Township Police Department filed a complaint charging Lewis with one count of assault in violation of R.C. 2903.13(A), a first-degree misdemeanor. As alleged in the complaint, the charge arose after Lewis caused physical harm to the victim, P.R., "by striking him in the face from behind with a closed fist" at approximately 11:15 a.m. on the morning of August 21, 2018. After Lewis struck P.R., the complaint alleges that P.R. then "fell to the ground and appeared unconscious." There is no dispute that the assault occurred at a concrete business located on Lake Drive in West Chester Township, Butler County, Ohio. There is also no dispute that Lewis, P.R., and Lewis' brother, D.L., were all working at the concrete business as independent contractors at the time of the assault.

{¶ 3} On May 10, 2019, the matter was tried to the bench. During trial, the trial court heard from two witnesses: Officer Schlensker and P.R. P.R., who stands 6'2" tall and weighs 270 pounds, testified that he was unloading materials from a truck when D.L. blocked his "right of way" and "bumped" into him while the two were "crossing paths." After bumping into each other, P.R. testified that D.L. then "threw an elbow" at him while his "hands [were] full carrying materials." P.R. testified that D.L.'s elbow contacted him in the ribs, chest, and stomach area.

{¶ 4} Upon being elbowed by D.L., P.R. testified that he "continued to walk" a few steps with D.L. "walking next to [him]." P.R. testified that D.L. then "threw a punch" that contacted him in the chest. After D.L. threw this punch, P.R. testified that D.L. then "came at [him pretty aggressively]." To this, P.R. testified that he "threw a punch back" at D.L. striking him "in the back [and] in the shoulder." When asked if he had punched D.L. before D.L. had punched him, P.R. testified, "No."

{¶ 5} P.R. testified that he and D.L. then "squared up to fight." However, before any more punches could be thrown, P.R. testified that Lewis came up from behind him and

- 2 -

"threw [a] cheap shot[]" that "struck [him] in the back of the head" knocking him unconscious. When asked if Lewis ever punched him again besides the one punch to the back of the head, P.R. testified that Lewis only punched him that one time before "[h]e was detained."

{¶ 6} P.R. testified that he "did not initiate" the fight with either Lewis or his brother, D.L., and that he "felt like it was a setup" that required him to defend himself. As P.R. testified:

> Q: Is it your testimony today that you did not initiate this fight?
>
> A: I did not initiate this fight.
>
> Q: You did not instigate this fight?
>
> A: I was – I took two shots before I did anything so I was elbowed and then punched.
>
> Q: So you are the victim here?
>
> A: Yes.

{¶ 7} P.R. also testified that he did not want to fight that morning and was not looking for a fight with either D.L. or Lewis that day. P.R. instead testified that it was D.L. who was looking for a fight with him. As P.R. testified:

> [D.L.] had always bantered [and was] trying to almost instigate or to (indiscernible) or something with me. My only interest as a contractor was to teach him a trade. So his antagonist mentality was – wasn't being accepted by – he had been in an altercation with other co-workers or our co-workers.

{¶ 8} After falling unconscious to the ground, P.R. testified that he woke up to a "commotion." P.R. testified that he then got up, walked into the office, and spoke with his boss. P.R. testified that he then reviewed the video surveillance footage of the assault because he "[w]asn't sure what happened." P.R. testified that somebody in the office then called 9-1-1.

{¶ 9} P.R. testified that the injuries he sustained from the assault ultimately resulted

in him receiving medical treatment at the hospital for "[p]lus or minus four hours" after he was transported to the hospital via an ambulance. Because P.R. did not have health insurance at the time of the assault, P.R. testified that he received a medical bill charging him over $6,500 in out-of-pocket medical expenses. P.R., however, testified that he was "not sure if anything ha[d] been paid on that bill."

{¶ 10} Officer Schlensker testified that he was the officer who was dispatched to the scene to investigate the assault involving Lewis, D.L., and P.R. During his investigation, Officer Schlensker testified that he obtained the video surveillance footage of the assault. When asked if that was "pretty much the extent of the evidence that was gathered," Officer Schlensker testified, "Correct." The video surveillance footage was then played for the trial court and admitted into evidence without objection. A review of that video surveillance footage confirms P.R.'s testimony regarding the assault.

{¶ 11} Lewis did not offer any testimony or evidence in his defense. Lewis' trial counsel, however, did argue as part of his closing argument that he was merely acting in defense of his brother, D.L., when he came up from behind P.R. and punched P.R. in the back of the head knocking him unconscious. As Lewis' trial counsel argued:

> [Lewis] did not get involved at all. He didn't get involved with that interaction [between P.R. and D.L.] at all. He, in fact, stands there and watches it. And then when the giant rhinoceros, 270 pounds, 6'2" is attacking his little brother, that's when he gets in. He did exactly what I would do if it was my sister being attacked by someone twice her size. He's not required to wait for [P.R.] to knock his brother out before he can step in when someone believes that a family member is in imminent danger of bodily harm than that person can get in and use reasonable force necessary to stop it, and that's what he did. * * * He has a right to defend his brother. He did absolutely what any reasonable person would have done in that situation.

{¶ 12} Following closing arguments, the trial court issued a decision from the bench finding Lewis guilty as charged. In reaching this decision, the trial court found no merit to

Lewis' claim that he was merely acting in defense of his brother, D.L. The trial court instead found Lewis' act of punching P.R. in the back of the head was a "cheap shot" that amounted to "assaultive behavior" in violation of R.C. 2903.13(A). Specifically, as the trial court stated when issuing its decision:

> I get the desire to defend your brother but the – I mean it's a cheap shot from behind. I mean if you had squared off with him and hit him, * * * but a shot from behind – you know, the size relative size don't matter to me as far as who's squaring off against who David, Goliath, all of this other stuff, you know what – * * *. A blow from behind is a cheap shot. * * * [T]he blow, the punch to the back of the head this Court does not find justified under the theory that I consider. So I make a finding of guilty with respect to the assault, single blow to the back of the head constitutes assaultive behavior.

{¶ 13} Immediately after finding Lewis guilty, the trial court sentenced Lewis to a suspended 30-day jail sentence, $150 fine, and court costs. The trial court also ordered Lewis to pay a then undetermined amount of restitution to P.R. to compensate him for his unpaid out-of-pocket medical expenses. The trial court issued a judgment entry later that day that noted its verdict finding Lewis guilty, as well as its sentencing decision as set forth above. The trial court's judgment entry also noted that additional documentation was needed in order to determine the proper amount of restitution that Lewis would be ordered to pay P.R. P.R. was ordered to provide this documentation to the trial court at an upcoming restitution hearing scheduled on June 18, 2019.

{¶ 14} On June 18, 2019, the parties appeared before the trial court for the restitution hearing.[1] During this hearing, P.R. submitted evidence indicating he had incurred out-of-pocket medical expenses totaling $4,785.66 resulting from the assault. Hearing no objection from Lewis, the trial court determined that this was the proper amount of restitution

---

1. We note that on May 22, 2019, Lewis filed a Crim.R. 29(C) motion for acquittal. In support of his motion, Lewis argued that he had "every right to step into the altercation in defense of his brother," D.L., upon observing his brother "being attacked by the much larger [P.R.]." The trial court denied Lewis' motion on June 11, 2019.

that Lewis would be ordered to pay P.R. to compensate him for his out-of-pocket medical expenses   The trial court then noted its decision ordering Lewis to pay $4,785.66 in restitution to P.R. on the judgment entry it had previously filed on the day of trial, May 10, 2019.  Lewis now appeals his conviction, raising a single assignment of error for review.

**Final Appealable Order**

{¶ 15} Prior to addressing Lewis' single assignment of error, we note the state's argument alleging Lewis' appeal must be dismissed since he did not file a notice of appeal within 30 days after the trial court issued its May 10, 2019 judgment entry in accordance with App.R. 4(A)(1).  However, because a restitution hearing was necessary to determine the proper amount of restitution Lewis would be ordered to pay P.R. to compensate him for his unpaid out-of-pocket medical expenses, the trial court's May 10, 2019 judgment entry was not a final appealable order.  This is because, "for a final appealable order to exist, the trial court must decide the specific amount of restitution an offender owes."  *State v. Beal*, 2d Dist. Clark No. 2015-CA-91, 2016-Ohio-3271, ¶ 13, citing *State v. Plassenthal*, 2d Dist. Montgomery No. 22464, 2008-Ohio-5465, ¶ 7-8.  That is to say, "[w]hen a judgment entry orders restitution but fails to set the amount or method of payment, the entry is not a final, appealable order."  *In re J.A.*, 4th Dist. Lawrence No. 11CA27, 2012-Ohio-2184, ¶ 6.

{¶ 16} Unlike the trial court's judgment entry originally filed on May 10, 2019, the trial court's judgment entry that it filed on June 18, 2019 includes the trial court's guilt finding, its sentence, and the final amount of restitution that Lewis was ordered to pay.  Therefore, rather than the trial court's May 10, 2019 judgment entry, it was the trial court's June 18, 2019 judgment entry that was a final appealable order.  *See, e.g., In re J.C.*, 11th Dist. Lake No. 2012-L-083, 2013-Ohio-1292, ¶ 12 ("as the April 9, 2012 entry contemplated further action by setting a restitution hearing for a later date, it was not a final, appealable order").  Accordingly, because Lewis filed his notice of appeal within 30 days of the trial court's June

- 6 -

18, 2019 judgment entry, Lewis' notice of appeal was timely filed under App.R. 4(A)(1).

**Appeal**

{¶ 17} In his single assignment of error, Lewis argues his conviction must be reversed because it was against the manifest weight of the evidence.

{¶ 18} A manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, this court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Wilks*, 154 Ohio St.3d 359, 2018-Ohio-1562, ¶ 168.

{¶ 19} While a manifest weight of the evidence review requires this court to evaluate credibility, the determination of witness credibility is primarily for the trier of fact to decide. *State v. Baker*, 12th Dist. Butler No. CA2019-08-146, 2020-Ohio-2882, ¶ 30, citing *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. "A verdict can be against the manifest weight of the evidence even though legally sufficient evidence supports it." *State v. Myers*, 154 Ohio St.3d 405, 2018-Ohio-1903, ¶ 140. This court will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *State v. Morgan*, 12th Dist. Butler Nos. CA2013-08-146 and CA2013-08-147, 2014-Ohio-2472, ¶ 34.

{¶ 20} Lewis was convicted of assault in violation of R.C. 2903.13(A), which provides that "[n]o person shall knowingly cause or attempt to cause physical harm to another or to another's unborn." Pursuant to R.C. 2901.22(B), "[a] person acts knowingly, regardless of

purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." The term "physical harm" in regard to persons means "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3). A victim's testimony is all that is needed to "sustain a conviction for assault in violation of R.C. 2903.13(A) if the victim's testimony proves all the elements of the offense." *State v. Lunsford*, 12th Dist., Butler No. CA2019-07-116, 2020-Ohio-965, ¶ 13, citing *Columbus v. McDaniel*, 10th Dist. Franklin No. 09AP-879, 2010-Ohio-3744, ¶ 18.

{¶ 21} Lewis argues his conviction is against the manifest weight of the evidence because the trial court incorrectly weighed the evidence and failed to properly execute its factfinding responsibilities. This is because, according to Lewis, he was acting in defense of his brother, D.L., when he punched P.R. in the back of the head knocking him unconscious, conduct that Lewis claims was "reasonable under the circumstances." Lewis supports this argument by making the general claim that, at his trial, he was entitled to the burden-shifting changes the General Assembly made to the self-defense statute, R.C. 2901.05, through the passage of 2017 Am.Sub.H.B. 228 ("H.B. 228") that became effective on March 28, 2019. Therefore, (1) because the burden of proof was on the state to prove beyond a reasonable doubt that he was not acting in defense of D.L. when he punched P.R. in the back of the head, and (2) because the state failed to provide sufficient evidence to satisfy this burden, Lewis argues his conviction must be reversed. We disagree.

{¶ 22} Lewis' argument requires this court to first determine whether he was entitled to the burden-shifting changes the General Assembly made to the self-defense statute, R.C. 2901.05, through the passage of H.B. 228, when the assault for which he was being tried occurred prior to the effective date of the statute, March 28, 2019. Although not explicit in his claim, Lewis generally argues that he was entitled to those burden-shifting changes

since his trial occurred on May 10, 2019, after the statute became effective on March 28, 2019. To the contrary, the state argues that Lewis was not entitled to those changes since those burden-shifting changes do not apply retroactively to any offense(s) that occurred prior to the statute's effective date. We agree with Lewis.

{¶ 23} Prior to March 28, 2019, the self-defense statute placed "[t]he burden of going forward with the evidence of an affirmative defense, and the burden of proof, by a preponderance of the evidence, for an affirmative defense, [was] upon the accused." Former 2901.05(A). However, on March 28, 2019, the self-defense statute was amended to shift the burden of proof to the state to "prove beyond a reasonable doubt that the accused person did not use the force in self-defense, defense of another, or defense of that person's residence, as the case may be." R.C. 2901.05(B)(1). This requires the state to "prove that the accused person did not use force in self-defense[, defense of another, or defense of that person's residence, as the case may be,] beyond a reasonable doubt if there is evidence that the accused used force in self-defense[, defense of another, or defense of that person's residence]." *State v. Gloff*, 12th Dist. Clermont No. CA2019-06-047, 2020-Ohio-3143, ¶ 3.

{¶ 24} In *State v. Debord*, 12th Dist. Clinton No. CA2019-03-003, 2020-Ohio-57, this court held "that appellant was 'not entitled to [the] retroactive application of the burden-shifting changes made by the legislature to Ohio's self-defense statute, R.C. 2901.05, as a result of H.B. 228.'" *Id.* at ¶ 14, quoting *State v. Koch*, 2d Dist. Montgomery No. 28000, 2019-Ohio-4099, ¶ 103. Albeit in dicta, this court later reiterated that holding in *State v. Franklin*, 12th Dist. Butler No. CA2019-02-026, 2020-Ohio-532, wherein this court stated in a footnote that "appellants are not entitled to the retroactive application of the burden-shifting changes made to R.C. 2901.05(B)(1)." *Id.* at ¶ 9, fn. 2., citing *Debord*. Therefore, based on this court's decisions in *Franklin* and *Debord*, we previously found the burden-

- 9 -

shifting changes the General Assembly made to Ohio's self-defense statute through the passage of H.B. 228 did not apply in circumstances where the offense(s) occurred prior to the effective date of that statute, March 28, 2019.

{¶ 25} This court was not alone in this holding. *See State v. Williams*, 3d Dist. Allen No. 1-19-39, 2019-Ohio-5381, ¶ 12, fn. 1 (holding it is "the version of R.C. 2901.05 in effect at the time the defendant committed the offense" that applies at the defendant's trial); *State v. Wallace-Lee*, 2d Dist. Greene No. 2019-CA-19, 2020-Ohio-3681, ¶ 22 ("[t]his court has concluded that shifting the burden of proof on self-defense to the State is not retroactive"); *State v. Whitman*, 5th Dist. Stark No. 2019CA00094, 2019-Ohio-4140, ¶ 11 ("[c]hanges to R.C. 2901.05, effective March 28, 2019, do not apply retroactively to appellant's case" and, therefore, "[t]he statute as amended does not provide for retroactive application"); *State v. Zafar*, 10th Dist. Franklin No. 19AP-255, 2020-Ohio-3341, ¶ 31 ("Ohio courts addressing this issue, including this court, have held that the change made by H.B. 228 'was not retroactive'"), citing *State v. Ward*, 10th Dist. Franklin No. 19AP-266, 2020-Ohio-465, ¶ 15; *see, e.g., State v. Brown*, 9th Dist. Wayne No. 19AP0004, 2020-Ohio-529, ¶ 23 ("[w]e first note that because the offense in this matter occurred prior to March 28, 2019, former R.C. 2901.05[A] applied at the time of Mr. Brown's trial, and it was therefore his burden to prove, by a preponderance of the evidence, that he acted either in self-defense or in defense of others").

{¶ 26} However, more recently, in *Gloff*, 2020-Ohio-3143, this court held that "the General Assembly enacted H.B. 228 to be effective March 28, 2019 and therefore criminal trials held on or after that date must be conducted in accordance with the provisions of that section." *Id.* at ¶ 28, citing *State v. Humphries*, 51 Ohio St.2d 95 (1977), paragraph four of the syllabus. This court reached this decision upon finding "[t]he H.B. 228 amendment applies prospectively to *trials*," and the "applicable burden of proof for the affirmative

defense of self-defense," and not "the conduct giving rise to the offense." (Emphasis sic.). *Id.* at ¶ 23. Therefore, in accordance with this court's more recent decision in *Gloff*, we overrule our decision in *Debord* and hold that the burden-shifting changes made by the legislature to Ohio's self-defense statute, R.C. 2901.05, through the passage of H.B. 228, applies to all trials that were held, or will be held, on or after the effective date of the statute, March 28, 2019. This holds true regardless of the when the offense(s) may have occurred. *Id.* at ¶ 22-23, 28. Accordingly, because Lewis' trial occurred on May 10, 2019, after the statute came into effect on March 28, 2019, Lewis was entitled to those burden-shifting changes.

{¶ 27} At trial, Lewis argued that he was acting in defense of his brother, D.L., when he came up behind P.R. and punched him in the back of the head knocking him unconscious. Lewis claims his actions were "legally justified" in order to "neutralize [P.R.'s] size advantage." However, while we agree that P.R. was noticeably larger than D.L., the record in this case is clear; the aggressor, D.L., voluntarily entered into the physical altercation with the victim, P.R. It is well established that "a person is not entitled to claim defense of another in regard to a physical altercation if the person being defended voluntarily entered the physical altercation." *State v. Gray*, 12th Dist. Butler No. CA2010-03-064, 2011-Ohio-666, ¶ 50. Ohio courts have in fact "long recognized that a person cannot provoke [an] assault or voluntarily enter an encounter and then claim a right of self-defense." *State v. Nichols*, 4th Dist. Scioto No. 01CA2775, 2002 Ohio App. LEXIS 329, *7 (Jan. 22, 2002).

{¶ 28} While not explicit in its decision, the trial court determined that the state had met its burden of proof set forth in R.C. 2901.05(B)(1) when it found Lewis' act of punching P.R. in the back of the head was a "cheap shot" that amounted to "assaultive behavior" in violation of R.C. 2903.13(A). We agree with the trial court's decision. P.R.'s uncontested

testimony, coupled with the video surveillance footage of the incident taken from the scene, proves this to be true beyond a reasonable doubt. That P.R. may have been noticeably bigger than D.L. does not change this fact. Or, as the trial court stated when issuing its decision, "the size relative size don't matter to me as far as who's squaring off against who David, Goliath, all of this other stuff." To hold otherwise would greatly expand the defense to any situation in which the aggressor picked a fight with a more physically intimidating opponent, such as the case here. That is clearly not the intent behind the law allowing for the defense of another. The intent behind the law is instead to provide a legal justification for the use of force in circumstances where the person being defended "would have been justified in using force to defend themselves." *State v. Hamrick*, 5th Dist. Stark No. 2011CA00041, 2012-Ohio-1214, ¶ 24.

{¶ 29} In light of the foregoing, while we agree that Lewis was entitled burden-shifting changes the General Assembly made to the self-defense statute at trial, the fact nevertheless remains that Lewis' conviction was not against the manifest weight of the evidence. In so holding, we note that unlike in *Gloff* where this court could not "assume the jury would reach the same verdict beyond a reasonable doubt when it was instructed that self-defense was Gloff's burden alone," this case does not present those same concerns. *Gloff.*, 2020-Ohio-3134 at ¶ 24. This is because, unlike in *Gloff*, this matter was tried to the bench, not a jury. It is well established that in a bench trial "the trial court is presumed to know the applicable law and apply it accordingly." *State v. Cornish*, 12th Dist. Butler No. CA2014-02-054, 2014-Ohio-4279, ¶ 30, citing *State v. Lloyd*, 12th Dist. Warren Nos. CA2007-04-052 and CA2007-04-053, 2008-Ohio-3383. Although without the benefit of our recent decision in *Gloff*, that is exactly what the trial court did here. Therefore, finding Lewis' conviction was not against the manifest weight of the evidence, Lewis' single assignment of error lacks merit and is overruled.

{¶ 30} Judgment affirmed.

RINGLAND and PIPER, JJ., concur.