[Cite as *Martinez v. Martinez*, 2023-Ohio-4783.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| ROSA MARTINEZ, | : | |
| Appellee, | : | CASE NO. CA2023-04-038 |
| | : | O P I N I O N |
| - vs - | | 12/28/2023 |
| | : | |
| ANEUDYS MARTINEZ, | : | |
| Appellant. | : | |

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. DV22100746

Rosa Martinez, pro se.

Gary A. McGee, for appellant.

**PIPER, J.**

{¶ 1} Aneudys Martinez ("Husband") timely appeals the decision of the Butler County Court of Common Pleas granting a domestic violence civil protection order ("DVCPO") in favor of Rosa Martinez ("Wife").

{¶ 2} On October 26, 2022, Wife filed a petition for a DVCPO against Husband. A temporary ex parte DVCPO was issued that day, and a final hearing was scheduled for

November 8, 2022. The final DVCPO hearing commenced as scheduled, but due to time constraints, the hearing was continued in progress until November 21, 2022. Wife was instructed to provide Husband's counsel with a witness list before the next hearing date and photos Wife claimed she possessed that showed her injuries.

{¶ 3} At the November 21 hearing, it was determined that Wife did not provide a witness list or the alleged photos to Husband's counsel. In addition, Husband's counsel informed the court that he did not bring any additional witnesses because he believed Wife was going to dismiss the case. Nonetheless, Husband's counsel expressed readiness to proceeded with the hearing. Wife and Husband were the only individuals to testify during the hearing, and their testimony was the only evidence presented to the court.

{¶ 4} Wife testified that she and Husband, though living together, had been sleeping in separate beds for two months. She claimed that at the end of September, Husband yelled at her, grabbed her, and became angry with her after seeing some messages on her phone wherein Wife was flirting with a man she met at work. Wife stated she and this individual were not in a relationship, and the texts had been occurring for about a month.

{¶ 5} Wife further testified that a few days later, as Husband and Wife were talking, Husband became angry, told her to leave their marital home, grabbed her, and pushed her into the refrigerator. According to Wife, Husband then began breaking items in the house and threatened to damage Wife's vehicle which Husband had bought. Wife did not call the police after this incident. Wife further claimed that in their eight years of marriage, Husband subjected Wife to regular "psychological violence."

{¶ 6} According to Wife, she moved out of the home and into Husband's father's home after these incidents. Wife later moved into an apartment. Wife admitted that Husband helped move Wife's belongings to the apartment and that he had given her approximately $2,600 to help cover her apartment's deposit and rent.

{¶ 7} Sometime after this move, Husband called Wife and related a story about a local barber. The barber had purportedly found inciting messages on his wife's phone, killed her, and then killed himself. Wife testified she felt this conversation was a threat.

{¶ 8} During cross-examination, Wife testified that she worked for Honeywell, and she admitted she suffered a work injury on the upper back side of her leg. The record did not specify which leg. Wife denied claiming to other people that this injury was caused by Husband.

{¶ 9} Husband testified that Wife planned to move out because she developed a relationship with her coworker at Honeywell. He admitted to accessing her phone and reading messages on her Instagram account. The messages, according to Husband, included Wife telling her coworker to come over to her apartment when it was ready. Husband testified that he and Wife agreed she would move out because he did not want to continue their relationship if she was talking to and flirting with another man. Husband claimed he never grabbed or pushed Wife and that the alleged photos of her injury were of her work injury.

{¶ 10} Husband admitted he told Wife about the news story involving the barber, but he asserted he did so because he was also a barber and just informing her of the news. In his words, "I told her because she moved to Fairfield. I told her that (indiscernible) in Ohio and people shouldn't do things like that. And that's not good. People is crazy now days [sic]."

{¶ 11} The magistrate issued a final DVCPO and gave two separate grounds for doing so: (1) Husband had, on multiple occasions, attempted to or recklessly caused Wife bodily injury; and (2) Husband placed Wife, by the threat of force, in fear of imminent serious physical harm. Among other restrictions, the order prohibited Husband from contacting Wife and ordered him to stay away from her. Husband filed objections to the magistrate's

decision. The trial court overruled the objections and adopted the decision of the magistrate. This appeal followed.

{¶ 12} First Assignment of Error:

**THE TRIAL COURT ERRED BY AFFIRMING THE MAGISTRATE'S DECISION/ORDER OF NOVEMBER 22, 2022 FOR [sic] A FINAL DOMESTIC VIOLENCE CIVIL PROTECTION ORDER**

{¶ 13} Within his single assignment of error, Husband argues that the magistrate's decision was supported by insufficient evidence and was against the manifest weight of the evidence. He contends Wife's testimony is not credible and notes Wife did not bring the photos she claimed she had to the hearing or provide a witness list to Husband's counsel as ordered.

{¶ 14} The Ohio Supreme Court has held that "when granting a protection order, the trial court must find that petitioner has shown by a preponderance of the evidence that petitioner or petitioner's family or household members are in danger of domestic violence." *Felton v. Felton*, 79 Ohio St.3d 34 (1997). We have previously defined "preponderance of the evidence" to mean, "the greater weight of the evidence, or evidence that leads the trier of fact to find that the existence of the contested fact is more probable than its nonexistence." *McGrady v. Muench*, 12th Dist. Warren No. CA2018-12-145, 2019-Ohio-2677, ¶ 12. Importantly, testimony of a victim, standing alone, can be sufficient to meet the preponderance of the evidence standard. *Felton*, 79 Ohio St.3d at 44.

{¶ 15} We have previously held that "a dispute regarding whether a protection order should have been granted at all will be reviewed as to whether the issuance was against the manifest weight of the evidence." *McBride v. McBride*, 12th Dist. Butler No. CA2011-03-061, 2012-Ohio-2146, ¶ 10. A manifest weight of the evidence determination must examine "the inclination of the greater amount of credible evidence * * * to support one side

of the issue rather than the other." *State v. Thompkins*, 78 Ohio St.3d 380, 387, (1997), quoting *Black's Law Dictionary* (6th Ed.1990); *see also Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 12, quoting *Thompkins*.

{¶ 16} Stated differently, during this examination, appellate courts "review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice" that it must be reversed on appeal. *State v. Wilks*, 154 Ohio St.3d 359, 2018-Ohio-1562, ¶ 168; *see also Halcomb v. Greenwood*, 12th Dist. Clermont CA2018-03-008, CA2018-03-010, CA2018-03-012, and CA2018-03-013, 2019-Ohio-194, ¶ 36.

{¶ 17} Under R.C. 3113.31(A)(1)(a)(i), domestic violence occurs where one attempts to cause or recklessly causes bodily injury to a family or household member. R.C. 3113.31 does not define "bodily injury," but "for purposes of the offense of domestic violence under R.C. 2901.01(A)(3), 'physical harm' to a person means 'any injury, regardless of its gravity or duration.'" *McGrady*, 2019-Ohio-2677 at ¶ 13, quoting *J.R. v. E.H.*, 10th Dist. Franklin No. 16AP-431, 2017-Ohio-516, ¶ 13; *State v. Reynolds*, 10th Dist. Franklin No. 03AP-701, 2004-Ohio-3692, ¶ 14.

{¶ 18} Domestic violence also occurs where one places another person "by the threat of force in fear of imminent serious physical harm * * *." R.C. 3113.31 (A)(1)(a)(ii). Threats of force constitute domestic violence under R.C. 3113.31 when there is fear from a threat that is deemed reasonable after considering the history of the parties. *Halcomb*, 2019-Ohio-194 at ¶ 5.

{¶ 19} Imminent means "'ready to take place,' 'near at hand,' 'impending,' 'hanging threateningly over one's head,' or 'menacingly near.'" *Bargar v. Kirby*, 12th Dist. Butler No. CA2010-12-334, 2011-Ohio-4904, ¶ 19, quoting *Henry v. Henry*, 4th Dist. Ross No.

04CA2781, 2005-Ohio-67, ¶ 19. Importantly, imminent "does not mean that the offender [has to] carry out the threat immediately or be in the process of carrying it out. Rather, the critical inquiry is whether a reasonable person would be placed in fear of imminent (in the sense of unconditional, non-contingent), serious physical harm * * *." *Id.* This analysis "involves both subjective and objective elements." *Id.* Examples of "serious physical harm" include any physical harm that "carries a substantial risk of death" or involves "permanent incapacity * * * temporary, substantial incapacity * * * permanent disfigurement * * * temporary, serious disfigurement * * * acute pain of such duration as to result in substantial suffering or * * * any degree of prolonged or intractable pain." R.C. 2901.01(A)(5).

{¶ 20} Husband argues that Wife's testimony is not credible. Specifically, Husband notes that he gave Wife money for her new apartment, helped move her things into it, and that Wife did not call the police after the alleged domestic violence occurred. These acts and inaction, he asserts, are not consistent with a domestic violence situation. Additionally, Husband believes Wife attempted to pass off a work injury as evidence of domestic violence. Finally, Husband argues, there is nothing in the record which supports Wife's assertion of bodily injury outside of her testimony.

{¶ 21} Husband is correct there was no outside evidence to support Wife's allegations of domestic violence. However, as established above, testimony alone, if believed, is sufficient to support the issuance of a DVCPO. Here, the parties' testimony establishes several important base facts that they agree on: (1) they had been living in separate bedrooms for approximately two months before the relevant time period; (2) Husband saw messages on Wife's phone wherein she was flirting with a coworker; (3) those messages caused further turbulence in their relationship; and (4) this turbulence prompted Wife's move out of their home.

{¶ 22} The degree of that turbulence, specifically whether it escalated to the point of

physical violence and threats, is the material fact disputed by the parties. However, the parties also agree that Husband told Wife the story about the barber who murdered his wife. The parallels between that story and the lives of the parties are troubling; both Husband and the individual in the news story were barbers and both became upset with their spouses after reading messages on their wives' phones. Conveyance of this story and Husband's musings on "crazy people," given the parties' recent and similar relationship struggles, could have reasonably been deemed a veiled threat by Wife that was meant to hang over her head in the midst of their relationship turmoil. This threat of violence gives some credence to Wife's testimony regarding her stated fear of Husband.

**{¶ 23}** Ultimately, there was nothing for the trial court to examine and weigh other than the testimony of the parties, and the court found Wife's story more credible and probable than Husband's. Upon review, we find the trial court did not clearly lose its way in resolving conflicts between Wife and Husband's testimony and in granting Wife a DVCPO. We find this to be particularly true in regard to the trial court's finding Husband placed Wife in fear of imminent serious physical harm with a threat of force.

**{¶ 24}** Judgment affirmed.

HENDRICKSON, P.J., and M. POWELL, J., concur.