[Cite as *Kronk v. Getts*, 2024-Ohio-1516.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

MADISON COUNTY


| | | |
|---|---|---|
| ASHLEY KRONK, | : | |
| Appellee, | : | CASE NO. CA2023-09-014 |
| | : | O P I N I O N |
| - vs - | | 4/22/2024 |
| | : | |
| ASHLEY GETTS, | : | |
| Appellant. | : | |


CIVIL APPEAL FROM MADISON COUNTY COURT OF COMMON PLEAS
Case No. DRH20220125


Ashley Kronk, pro se.

Sabol Law Office, and Garry A. Sabol, for appellant.


**S. POWELL, P.J.**

{¶ 1}   Appellant, Ashley Getts, appeals the decision of the Madison County Court of Common Pleas granting a civil stalking protection order against her to appellee, Ashley Kronk.  For the reasons outlined below, we affirm the trial court's decision.

{¶ 2}   On June 28, 2022, Kronk filed a petition for a civil stalking protection order against Getts.  To support her petition, Kronk alleged that she feared for her safety and

the safety of her children because of the "extreme measures" that Getts had undergone to harass her and her family both online and off. Nearly a year later, on May 17, 2023, the matter came before a trial court magistrate for a full hearing. During this hearing, the magistrate heard testimony from a total of three witnesses. This included testimony from Kronk and Getts, both of whom appeared before the magistrate pro se.

{¶ 3} As part of her testimony, Kronk testified that Getts had been harassing her online via Facebook and Facebook Messenger for nearly two years. Kronk testified that this included Getts making several fake Facebook profiles that she then used to make a variety of posts on Facebook calling her a "mental case," "bum," "freeloader," "psychopath," and "unstable," as well as Getts accusing her of stealing money from her son. Kronk testified that Getts had also been harassing her over the phone, as well as through Instagram Messenger, and that Getts had contacted and thereafter disparaged her to several of her friends, various members of her family, her two children's respective fathers, and her pastor.

{¶ 4} Kronk additionally testified that Getts would oftentimes drive by the house in which she is staying, a drive that Kronk testified would take Getts over 30 minutes to make one way, and that Getts would flip her off whenever they happened to cross paths on the street. Following this testimony, Kronk thereafter testified, in pertinent part, the following:

> In conclusion, there is clearly a pattern of harassment and defamation of my character by Ashley Getts toward me. Even though she has not physically threatened me, I feel threatened. If she is capable of going to the extreme measures to contact me, my friends, and my family, I am not sure what she is capable of. I need to do what's best for myself and my children to protect us.

This was in addition to Kronk testifying, "In order for me to get some relief from this harassment, I honestly feel like it is not going to stop until something is further done."

- 2 -

**{¶ 5}** On August 15, 2023, the magistrate issued a decision granting Kronk's petition for a civil stalking protection order against Getts. In so doing, the magistrate checked a box noting its decision finding Kronk had proven by a preponderance of the evidence that Getts had knowingly engaged in a pattern of conduct that caused Kronk to believe Getts would cause her physical harm or to suffer mental distress. Two weeks later, on August 29, 2023, Getts filed an objection to the magistrate's decision. The trial court summarily overruled Getts' objection to the magistrate's decision on September 6, 2023. Upon the trial court overruling Getts' objection, Getts filed a timely notice of appeal challenging the trial court's decision to grant Kronk a civil stalking protection order against her. Getts' appeal now properly before this court for decision, Getts has raised the following single assignment of error for review.

**{¶ 6}** THE TRIAL COURT ERRED AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE WHEN IT GRANTED THE CIVIL PROTECTION ORDER.

**{¶ 7}** In her single assignment of error, Getts argues the trial court erred by granting Kronk a civil stalking protection order against her. To support this claim, Getts argues the trial court's decision granting Kronk a civil stalking protection order was not supported by sufficient evidence and was against the manifest weight of the evidence. We disagree.

**{¶ 8}** "R.C. 2903.214 governs both civil stalking and sexually oriented offense protection orders." *Tucker v. Uhl*, 12th Dist. Butler No. CA2023-05-052, 2023-Ohio-3680, ¶ 15. "The trial court must find that the elements of R.C. 2903.214(C)(1) were proven by a preponderance of the evidence in order to grant the petitioner a civil stalking protection order." *Mather v. Hilfinger*, 12th Dist. Warren No. CA2020-12-083, 2021-Ohio-2812, ¶ 16. "Preponderance of the evidence" means the greater weight of the evidence, or evidence that leads the trier of fact to find that the existence of the contested fact is more

probable than its nonexistence. *McGrady v. Muench*, 12th Dist. Warren No. CA2018-12-145, 2019-Ohio-2677, ¶ 12. Therefore, "[w]hen assessing whether a civil stalking protection order should have been issued, the reviewing court must determine whether there was sufficient credible evidence to prove by a preponderance of the evidence that the petitioner was entitled to relief." *Fouch v. Pennington*, 12th Dist. Clermont No. CA2011-10-075, 2012-Ohio-3536, ¶ 9. This standard is, in essence, a review as to whether the issuance of the civil stalking protection order was against the manifest weight of the evidence. *McBride v. McBride*, 12th Dist. Butler No. CA2011-03-061, 2012-Ohio-2146, ¶ 10.

{¶ 9} "The standard of review for a manifest weight challenge in a civil case is the same as that applied to a criminal case." *Dunn v. Clark*, 12th Dist. Warren No. CA2015-06-055, 2016-Ohio-641, ¶ 8, citing *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 17. A challenge to the manifest weight of the evidence requires this court to examine whether there exists a greater amount of credible evidence to support one side of the issue rather than the other. *Martinez v. Martinez*, 12th Dist. Butler No. CA2023-04-038, 2023-Ohio-4783, ¶ 15. Therefore, when considering a manifest weight challenge, this court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created a manifest miscarriage of justice warranting reversal and a new trial ordered." *Hacker v. House*, 12th Dist. Butler No. CA2014-11-230, 2015-Ohio-4741, ¶ 21, citing *Eastley* at ¶ 20.

{¶ 10} However, while this court must weigh the evidence and consider the credibility of the witnesses, it is well established that a determination regarding the witnesses' credibility is primarily for the trier of fact to decide. *See State v. Lewis*, 12th Dist. Butler No. CA2019-07-128, 2020-Ohio-3762, ¶ 19 ("[w]hile a manifest weight of the

evidence review requires this court to evaluate credibility, the determination of witness credibility is primarily for the trier of fact to decide"). To that end, because it is primarily the trier of fact who decides the witnesses' credibility, "[a] judgment will not be reversed as being against the manifest weight of the evidence where the judgment is supported by some competent, credible evidence going to all essential elements of the case." *Halcomb v. Greenwood*, 12th Dist. Clermont Nos. CA2018-03-008, CA2018-03-010, CA2018-03-012, and CA2018-03-013, 2019-Ohio-194, ¶ 36. Accordingly, "reversing a judgment on manifest weight grounds should only be done in exceptional circumstances, when the evidence weighs heavily against the judgment." *Jones v. Wall*, 12th Dist. Warren No. CA2015-10-088, 2016-Ohio-2780, ¶ 14.

{¶ 11} Pursuant to R.C. 2903.214(C)(1), the issuance of a civil stalking protection order "requires the petitioner to establish that the respondent engaged in conduct constituting menacing by stalking." *Harnar v. Becker*, 12th Dist. Warren No. CA2020-10-068, 2021-Ohio-784, ¶ 6. R.C. 2903.211(A)(1) defines "menacing by stalking" to mean engaging in a "pattern of conduct" that "knowingly" causes "another person to believe that the offender will cause physical harm to the other person" or "mental distress to the other person * * *." More specifically, R.C. 2903.221(A)(1) states:

> No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or a family or household member of the other person or cause mental distress to the other person or a family or household member of the other person.

{¶ 12} As can be seen, "[t]he plain language of the statute simply refers to conduct that will affect 'the other person.'" *Lane v. Brewster*, 12th Dist. Clermont No. CA2011-08-060, 2012-Ohio-1290, ¶ 20, citing R.C. 2903.211(A)(1). As a result, the language found in R.C. 2903.22(A)(1) "does not require a court to determine the respondent's effect on

- 5 -

the 'reasonable' person, [but] only those specifically involved." *Id*. Therefore, when determining whether the petitioner is entitled to the issuance of a civil stalking protection order against the respondent pursuant to R.C. 2903.214(C)(1), "the focus is on the petitioner's fear, not that of an objective, reasonable person." *Fortney v. Willhoite*, 11th Dist. Lake No. 2011-L-120, 2012-Ohio-3024, ¶ 43.

{¶ 13} "A person acts knowingly, regardless of purpose, when the person is aware that [his or her] conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). "A person has knowledge of circumstances when he [or she] is aware that such circumstances probably exist." *Id.* "To establish a pattern of conduct, there only needs to be two or more actions closely related in time." *Fouch*, 2012-Ohio-3536 at ¶ 9, citing R.C. 2903.211(D)(1). In determining what constitutes a "pattern of conduct," the trial court must take every action of the respondent into consideration even if some of the actions, in isolation, may not seem that particularly threatening. *Middletown v. Jones*, 167 Ohio App.3d 679, 2006-Ohio-3465, ¶ 10 (12th Dist.).

{¶ 14} "[A] pattern of conduct need not be proven by events from two different days." *Hammond v. Sait*, 7th Dist. Mahoning No. 22 MA 0032, 2023-Ohio-893, ¶ 34. It is therefore entirely possible that "a pattern of conduct can arise out of two or more events which occur on the same day." *Fouch*, citing *Shockey v. Shockey*, 5th Dist. Delaware No. 08CAE070043, 2008-Ohio-6797, ¶ 19. This holds true so long as there are sufficient intervals of time between the events. *Wilson v. Rowe*, 5th Dist. Knox No. 15-CA-14, 2016-Ohio-523, ¶ 28. "Explicit threats are not necessary to establish menacing by stalking under R.C. 2903.211." *Bartells v. Bertel*, 12th Dist. Butler No. CA2016-11-216, 2018-Ohio-21, ¶ 56.

{¶ 15} R.C. 2903.211(D)(2) defines "mental distress" to mean either: (1) any mental illness or condition that involves some temporary substantial incapacity; or (2) any

mental illness or condition that would normally require psychiatric treatment, psychological treatment, or other mental health services, regardless of whether any person requested or received psychiatric treatment, psychological treatment, or other mental health services. *Wilson v. Wilson*, 12th Dist. Butler No. CA2023-01-009, 2023-Ohio-4243, ¶ 24. Although constituting something more than mere mental stress or annoyance, *Swartz v. Van Deest*, 5th Dist. Licking No. 2022 CA 00080, 2023-Ohio-1882, ¶ 25, "[m]ental distress need not be incapacitating or debilitating." *Joy v. Letostak*, 10th Dist. Franklin No. 14AP-1040, 2015-Ohio-2667, ¶ 25. Expert testimony is also "not required to demonstrate that a petitioner has suffered from mental distress." *Coleman v. Razete*, 1st Dist. Hamilton No. C-180232, 2019-Ohio-2106, ¶ 24, citing *Smith v. Hein*, 1st Dist. Hamilton No. C-140529, 2015-Ohio-2749, ¶ 9.

**{¶ 16}** It is instead the "duty of the trier of fact to determine whether a victim suffered mental distress as a result of the offender's actions." *Fouch*, 2012-Ohio-3536 at ¶ 13, citing *Jones*, 2006-Ohio-3465 at ¶ 7. "In making this determination, the trial court 'may rely on its knowledge and experience in determining whether mental distress has been caused.'" *Mather*, 2021-Ohio-2812 at ¶ 23, quoting *Smith v. Wunsch*, 162 Ohio App.3d 21, 2005-Ohio-3498, ¶ 18 (4th Dist.). Therefore, "while mental distress need not be shown to any level of professional certainty," mental distress must nevertheless "be proven by facts introduced at trial and the reasonable inferences springing from those facts." *Cleveland Hts. v. Lewis*, 8th Dist. Cuyahoga No. 79511, 2002-Ohio-2736, ¶ 22.

**{¶ 17}** In this case, and as noted above, Getts argues the trial court's decision to grant Kronk a civil stalking protection order against her was not supported by sufficient evidence and was against the manifest weight of the evidence. This is because, according to Getts, the record is devoid of any evidence to prove she engaged in a pattern of conduct that either knowingly caused Kronk to believe that she would cause her

physical harm or to suffer mental distress. However, given the trial court's decision in this case, it is clear that the trial court found Kronk's testimony that she felt "threatened" by Getts' harassment over the preceding two years sufficient to prove by a preponderance of the evidence that Getts had either knowingly caused Kronk to believe that she would cause her physical harm or to suffer mental distress. The same is true as it relates to Kronk's testimony wherein Kronk testified that she was "not sure" what Getts was "capable of," thereby making it necessary for Kronk "to do what's best" to "protect" both herself and her children from Getts given the "extreme measures" that Getts had gone to contact her, her friends, her family, and even her pastor. We find no error in the trial court's decision.

{¶ 18} Therefore, given the record properly before this court, and while it certainly would have been helpful for this court's review had the trial court magistrate done something more than simply check a box setting forth its findings, the record nevertheless supports the trial court's decision to grant Kronk a civil stalking protection order against Getts in this case. *See, e.g., Cutler v. Reed*, 12th Dist. Butler No. CA2015-06-105, 2016-Ohio-1151, ¶ 29-31 (affirming trial court's grant of a civil stalking protection order where petitioner had been subjected to respondent's "ongoing and repeated harassment" both online and off for a period of several months). Getts' claim otherwise lacks merit. Accordingly, because the trial court's decision to grant Kronk a civil stalking protection order against Getts was supported by sufficient evidence and was not against the manifest weight of the evidence, Getts' single assignment of error lacks merit and is overruled.

{¶ 19} Judgment affirmed.

PIPER and BYRNE, JJ., concur.