[Cite as *Copas v. Luikart*, 2025-Ohio-1694.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY

| | | |
|---|---|---|
| HALEY COPAS, | : | |
| Appellee, | : | CASE NO. CA2024-08-020 |
| | : | O P I N I O N AND JUDGMENT ENTRY |
| - vs - | : | 5/12/2025 |
| | : | |
| AARON LUIKART, | : | |
| Appellant. | : | |

CIVIL APPEAL FROM FAYETTE COUNTY COURT OF COMMON PLEAS
Case No. CVH 2024 0038

Haley Copas, pro se.

The Law Office of Eric J. Allen, Ltd., and Eric J. Allen, for appellant.

## **O P I N I O N**

**SIEBERT, J.**

{¶ 1} Appellant, Aaron Luikart, appeals the decision of the Fayette County Court of Common Pleas denying his motion for relief from a judgment granting a civil stalking protection order ("CSPO") against him. Appellee, Haley Copas, presented competent,

credible evidence of Luikart's threatening "pattern of conduct" supporting the CSPO. The menacing by stalking statute does not require evidence of immediate and present danger at a full CSPO hearing. Luikart failed to establish the trial court abused its discretion by denying Luikart relief from the judgment. Therefore, we affirm the decision of the trial court.

## I. Facts and Procedural History

### Petition for CSPO

{¶ 2}   On February 6, 2024, Copas filed a petition for a CSPO against Luikart. To support her petition, Copas alleged that Luikart had been stalking her. That same day, the magistrate held an ex parte hearing, which Copas attended along with a victim's advocate. As part of her testimony, Copas described several encounters with Luikart over a two-year period that she found concerning.

{¶ 3}   First, approximately two years before Copas testified, unbeknownst to Copas, Luikart had followed her and a friend to Kentucky and engaged in a physical altercation with Copas' friend. After the incident, Copas discovered Luikart had attached a tracking device underneath her vehicle without her knowledge. The device was subsequently removed by law enforcement.

{¶ 4}   Second, sometime between 2022 and 2023, Luikart threatened Copas and her family, stating that if Copas obtained a restraining order against him, Luikart, his brother, and his father would make her life a "living hell." Luikart further threatened to "come after" Copas' younger brother, stating he knew her brother's routine, and that it "would be a shame if something happened to him."

{¶ 5}   Third, in May 2023, Luikart created an Instagram profile which contained nude photographs of Copas. After Copas blocked all contact from Luikart, he shared the Instagram profile with the public.

**{¶ 6}** Fourth, one month before the ex parte hearing, Luikart went to the local hospital where Copas worked, when she was not present, and left "things" on her desk without her permission. Luikart returned to Copas' work the following day and waited for her in the parking lot. Copas stated Luikart did not approach her that day because hospital security escorted her to her vehicle.

**{¶ 7}** Fifth, Copas testified there had been several instances when she was working with some of her patients at a local gym, and Luikart approached her, cornered her in the hallways, or blocked access to her vehicle. Although Luikart was formerly a member of the gym, the gym's owner reprimanded Luikart for his behavior toward Copas, "kicked [him] out" of the gym by the time of the ex parte hearing, and no longer permitted him to be on the premises. Despite this, Copas encountered Luikart in a parking lot near the gym one week prior to the hearing. At that time, Luikart was rummaging through his trunk, allegedly searching for a knife, and yelling at Copas.

**{¶ 8}** Finally, the night before the hearing, Copas and a friend were dining at a local restaurant when Luikart arrived. According to Copas, Luikart walked in and out of the restaurant twice before sitting by himself at the bar and staring at her. Eventually, Luikart engaged in a conversation with Copas before leaving. When Copas left the restaurant, she discovered her vehicle was covered in calamine lotion. The restaurant did not have security cameras in its parking lot, so Copas acknowledged she could not conclusively prove it was Luikart who put the lotion on her vehicle.

**{¶ 9}** Based upon the evidence Copas presented at the ex parte hearing, the magistrate issued a temporary ex parte CSPO and scheduled a full evidentiary hearing on the matter on February 14, 2024, at 9:00 a.m. ("CSPO hearing"). On February 8, 2024, a sheriff personally served Luikart notice of the ex parte CSPO the magistrate had granted and the related CSPO hearing, including its date, time, and location.

- 3 -

{¶ 10} The trial court held the CSPO hearing according to the scheduled date and time. The trial court noted on the record that although service to Luikart had been perfected on February 8th, he was not there. Copas appeared and confirmed her testimony from the ex parte hearing. Copas also brought police reports and informed the court that Luikart had been "arrested" with a "pending case against him of menacing by stalking" in which Copas was the alleged victim.

{¶ 11} Based upon Copas' testimony, the trial court granted the CSPO for a period of five years.

### Motion to Reopen

{¶ 12} On February 22, 2024, Luikart moved the trial court to reopen the case and set a new hearing date. Luikart argued the trial court should reopen the case because "counsel was with Mr. Luikart in [municipal court] and did not catch the hearing that occurred the same day in the [trial court]." Shortly thereafter, Luikart retained new counsel to represent him in the case.

{¶ 13} On July 1, 2024, the trial court held a hearing on Luikart's motion to reopen, which it construed as a motion for relief from judgment pursuant to Civ.R. 60(B). Luikart and his former attorney, Peter Scranton, testified at the hearing. Their testimony revealed that Luikart had separate legal cases pending before different courts on February 14, 2024, and he was scheduled to appear in both. The CSPO hearing occurred at the trial court at 9:00 a.m. The second hearing occurred in the local municipal court at 11:00 a.m. and concerned a pending criminal case against Luikart ("Municipal Court hearing"). Copas attended both the CSPO and Municipal Court hearings. Luikart failed to appear at the CSPO hearing but did appear at the Municipal Court hearing.

{¶ 14} Luikart and his former counsel acknowledged that Luikart was served with the ex parte CSPO, which contained the date, time, and location for the CSPO hearing,

and that Luikart had retained Scranton to "handle" the matter prior to the date for the CSPO hearing. Luikart attributed his failure to appear at the CSPO hearing to his confusion regarding the separate cases, as well as a trip to the hospital that morning for low blood sugar. Luikart provided documentation regarding his hospital trip, but it did not indicate what time he was at the hospital on the day of the CSPO hearing.

{¶ 15} After considering the evidence presented at the hearing, the trial court denied Luikart's 60(B) motion. The court found that Luikart was served with notice of the CSPO hearing and his explanation for missing it was inconsistent and unsupported by detailed documentation. Therefore, the court held Luikart had failed to establish he was entitled to relief from judgment.

## The Appeal

{¶ 16} Luikart now appeals, raising two assignments of error for this court's review.

{¶ 17} Assignment of Error No. 1:

THE TRIAL COURT ERRED WHEN IT GRANTED THE CIVIL PROTECTION ORDER FOR THE PETITIONER.

{¶ 18} Luikart argues the trial court's decision granting Copas a CSPO is against the manifest weight of the evidence. We disagree. Copas presented competent, credible evidence that Luikart engaged in the type of "pattern of conduct" required to support the CSPO. Luikart's argument that Copas was required to show a "danger of immediate harm" is misplaced in his appeal of the trial court's issuance of the CSPO because that statutory requirement only applies to ex parte CSPO orders.

{¶ 19} We begin our analysis of Luikart's assignment of error by establishing the applicable CSPO law and our standard of review.

## Applicable CSPO Law and Standard of Review

{¶ 20} Pursuant to R.C. 2903.214(C)(1), the issuance of a civil stalking protection

order "requires the petitioner to establish," by a preponderance of the evidence, "that the respondent engaged in conduct constituting menacing by stalking." *Harnar v. Becker*, 2021-Ohio-784, ¶ 6, 10 (12th Dist.). "Menacing by stalking" means engaging in a "pattern of conduct" that "knowingly" causes "another person to believe that the offender will cause physical harm to the other person" or "mental distress to the other person or a family or household member of the other person." R.C. 2903.211(A)(1). As relevant here, "pattern of conduct" means "two or more actions or incidents closely related in time." R.C. 2903.211(D)(1).

{¶ 21} "Preponderance of the evidence" means the greater weight of the evidence, or evidence that leads the trier of fact to find that the existence of the contested fact is more probable than its nonexistence. *Cutler v. Reed*, 2016-Ohio-1151, ¶ 28 (12th Dist.). Therefore, "[w]hen assessing whether a civil stalking protection order should have been issued, the reviewing court must determine whether there was sufficient credible evidence to prove by a preponderance of the evidence that the petitioner was entitled to relief." *Fouch v. Pennington*, 2012-Ohio-3536, ¶ 9 (12th Dist.). This standard is, in essence, a review as to whether the issuance of the civil stalking protection order was against the manifest weight of the evidence. *Kronk v. Getts*, 2024-Ohio-1516, ¶ 8 (12th Dist.), citing *McBride v. McBride*, 2012-Ohio-2146, ¶ 10 (12th Dist.).

{¶ 22} A challenge to the manifest weight of the evidence requires this court to examine whether there exists a greater amount of credible evidence to support one side of the issue rather than the other. *Martinez v. Martinez*, 2023-Ohio-4783, ¶ 15 (12th Dist.). Therefore, when considering a manifest weight challenge, this court (1) reviews the entire record, (2) weighs the evidence and all reasonable inferences, (3) considers the credibility of the witnesses, and (4) determines whether the trier of fact "in resolving conflicts in the evidence, clearly lost its way and created a manifest miscarriage of justice." *Id.* at ¶ 16. If

the appellate court finds the trial court lost its way and created an injustice, it must reverse the trial court's decision. *Id.* But this appellate review is conducted according to well established legal principles.

**{¶ 23}** A core principle within our justice system is that the trier of fact primarily determines witness credibility. *Konk* at ¶ 10, citing *State v. Lewis*, 2020-Ohio-3762, ¶ 19 (12th Dist.). This norm means that within an appellate court's "manifest weight" review, if the judgment is "supported by some competent, credible evidence going to all essential elements of the case," this court will not reverse it. *Id.* Accordingly, reversing a judgment on manifest weight grounds is the rare exception, rather than the rule. *See id.*

**{¶ 24}** Luikart contends it is against the manifest weight of the evidence that he engaged in the statutorily required pattern of conduct and that Copas was in danger of immediate harm.

<u>Luikart's Actions Constitute a Pattern of Conduct</u>

**{¶ 25}** Luikart asserts that Copas' testimony did not establish that he engaged in a pattern of conduct as defined by R.C. 2903.211 because the events Copas described were not closely related in time. In support, Luikart argues that some of Luikart's conduct occurred two years prior to Copas' CSPO petition, and that Copas did not "attempt to provide dates for the incidents."

**{¶ 26}** "To establish a pattern of conduct, there only needs to be two or more actions closely related in time." *Konk,* 2024-Ohio-1516 at ¶ 13, citing R.C. 2903.211(D)(1). The trier of fact should resolve whether the incidents in question satisfy this statutory requirement "considering the evidence in the context of all the circumstances of the case." *Middletown v. Jones*, 2006-Ohio-3465, ¶ 10 (12th Dist.). But the "context" a court considers is not limited to the incidents which were "closely related in time." *See id.* at ¶ 11. In *Jones*, this court considered reported and unreported

- 7 -

threatening incidents spanning four years to provide "context" for two other incidents occurring within the same month.[1] *Id.* That is, the incidents spanning four years provided the context for the two incidents within a month which were "closely related in time" and therefore met the statutory threshold for a "pattern of conduct." *Id. Jones* shows it is appropriate for a court to consider incidents that occurred more remotely in time to provide context to the facts and circumstances of the case. But in order to justify a CSPO under the plain language of the statute, the petitioner must still show two or more incidents "closely related in time," even if more remote, contextual incidents are presented.

**{¶ 27}** First, we consider the "context" of incidents occurring over approximately two years prior to Copas petitioning for a CSPO against Luikart.[2] Luikart followed Copas and a friend to Kentucky, had a physical altercation with her friend, and placed a tracking device on Copas' car. Luikart threatened Copas and her family if she got a restraining order. He posted nude photographs of her online. Luikart regularly approached Copas at the gym where she saw patients, cornered her in the hallways, or blocked access to her vehicle. Luikart's behavior toward Copas at this gym led the gym's owner to kick him out and ban him from the premises.

**{¶ 28}** With that context of Luikart's behavior toward Copas in place, we next consider whether other incidents Copas provided testimony about were related closely enough in time to establish a "pattern of conduct." It might surprise no one reading this opinion to find our answer is "yes, a pattern of conduct" followed the context established by Luikart's prior actions.

---

1. "Explicit threats are not necessary to establish menacing by stalking under R.C. 2903.211." *Bartells v. Bertel*, 2018-Ohio-21, ¶ 56 (12th Dist.). Even if isolated incidents may not seem "particularly threatening," they must still be considered by the court. *Jones* at ¶ 11.

2. While Copas did not provide specific dates for these incidents, she did testify to the approximate timeline.

**{¶ 29}** About *a month before* Copas petitioned for a CSPO, Luikart showed up at the hospital where she worked and left items on her desk while she was not around. *The next day*, Luikart was waiting for Copas in the hospital parking lot as she left work. Copas' belief that Luikart's presence threatened her was supported by the fact a hospital security guard accompanied Copas to the parking lot that day. *One week prior* to Copas' CSPO petition, Luikart was in a parking lot near the gym, rummaging through his trunk for a knife and yelling at Copas. *The night before* the ex parte CSPO hearing, Luikart showed up at the restaurant where she and a friend were dining. He went in and out of the restaurant several times *during the course of their dinner*. He stared at Copas, approached her, and engaged in unwanted conversation with her.

**{¶ 30}** Luikart's behavior in the month prior to the ex parte CSPO hearing establishes overwhelming evidence that his actions met the definition of a "pattern of conduct." But his behavior in that month also shows an escalation in the frequency of incidents: a month before—two days in a row, one week prior, the night before—several times over the course of one dinner. Luikart's escalation led Copas to describe her encounters with Luikart as "*non-stop.*"

**{¶ 31}** We reviewed the entire record, weighed the evidence, and evaluated all reasonable inferences from that evidence. Our review shows Copas provided competent, credible evidence supporting her allegation that Luikart's actions constituted the essential element of "pattern of conduct" within the menacing by stalking statute, and the trial court found her evidence credible. The trial court did not "lose its way" nor did it create a "miscarriage of justice" by granting the CSPO. As such, the manifest weight of the evidence did not weigh heavily against the trial court's judgment that Luikart engaged in a pattern of conduct pursuant to R.C. 2903.211(D)(1).

Immediate Harm

{¶ 32} Luikart next argues that the evidence at the hearing did not show that Copas was in immediate danger as required by R.C. 2903.214. In support, Luikart recites language from R.C. 2903.214(D)(1), stating that "[i]mmediate and present danger to the person to be protected by the protection order constitutes good cause . . . ." However, a careful reading of R.C. 2903.214 reveals that subsection (D)(1) pertains to civil protection orders issued ex parte, not civil protection orders issued after a full hearing.

{¶ 33} In order to award a CSPO after a full hearing, the trial court "must find that the elements of R.C. 2903.214*(C)(1)* were proven by a preponderance of the evidence." (Emphasis added.) *Mather v. Hilfinger*, 2021-Ohio-2812, ¶ 16 (12th Dist.). Pursuant to the plain language of that subsection of the statute, a petitioner is not required to establish "immediate and present danger" to be granted a CSPO. *See* R.C. 2903.214(C)(1). Instead, "immediate and present danger" is only referenced in R.C. 2903.214(D)(1), which specifies what *may* justify issuing a civil protection order ex parte. An ex parte order requires petitioner to show "good cause" and specifies showing "immediate and present danger" does constitute one way of showing "good cause." *Id.* The language requiring "good cause," which may be established by showing "immediate and present danger" does not extend to civil protection orders issued after a full hearing under R.C. 2903.214(C)(1). *See T.O. v. T.G.*, 2024-Ohio-4510, ¶ 60 (2d Dist.) (noting limiting requirement for "immediate and present danger" logical considering this burden at ex parte proceedings helps protect rights of absent respondents, which is not concern at full hearing when both parties have right to present evidence).

{¶ 34} Luikart ignores the plain language of R.C. 2903.214(C)(1) and focuses solely on subsection (D)(1). We find the requirements of R.C. 2903.214(D)(1) inapplicable to the instant appeal. Luikart fails to identify any reason why Copas was required to prove

- 10 -

she was in fear of immediate and present danger before obtaining a CSPO against Luikart, despite no statutory requirement to do so. As this court has stated, "[i]t is not . . . our duty to create an argument where none is made." *In re A.Z.*, 2011-Ohio-6739, ¶ 18 (12th Dist.).

{¶ 35} Luikart failed to show the trial court granted the CSPO against the manifest weight of the evidence. Copas provided competent, credible evidence that Luikart engaged in a pattern of conduct which satisfied R.C. 2903.211 and 2903.214, especially after considering the context of Luikart's actions over the preceding two years. The plain language of R.C. 2903.214(C)(1) contains no requirement to show "immediate and present danger," so Luikart's argument fails on that as well.

{¶ 36} We overrule his first assignment of error.

{¶ 37} Assignment of Error No. 2:

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED APPELLANT'S 60(B) MOTION.

{¶ 38} In his remaining assignment of error, Luikart argues the trial court abused its discretion by denying his motion for relief from judgment. The trial court may relieve a party from a final judgment, order, or proceeding for several specific reasons, including, as relevant to this appeal, "excusable neglect." Civ.R. 60(B)(1)-(5).

{¶ 39} To prevail on a Civ.R. 60(B) motion, the moving party must demonstrate that: (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time. *Reynolds v. Turull*, 2019-Ohio-2863, ¶ 9 (12th Dist.), citing *GTE Automatic Electric v. ARC Industries, Inc.*, 47 Ohio St.2d 146, (1976), paragraph two of the syllabus.

{¶ 40} The trial court has discretion to grant or deny a Civ.R. 60(B) motion and the

court's decision will be reversed only for an abuse of that discretion. *Purcell v. Schaefer*, 2014-Ohio-4894, ¶ 26 (12th Dist.); *Bowman v. Leisz*, 2014-Ohio-4763, ¶ 17 (12th Dist.). A trial court abuses its discretion when it acts with an unreasonable, arbitrary, or unconscionable attitude. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶ 41}** The trial court denied Luikart's motion because he failed to establish that he was entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5). On appeal, Luikart claims that he was entitled to relief under Civ.R. 60(B)(1) due to "excusable neglect."

**{¶ 42}** "Inaction of a defendant is not 'excusable neglect' if it can be labeled as a 'complete disregard for the judicial system.'" *Kay v. Marc Glassman, Inc.*, 1996-Ohio-430, ¶ 10, quoting *GTE Automatic Electric,* 47 Ohio St.2d at 153. This court has acknowledged "unusual or special circumstances can justify neglect, [but] if a party could have controlled or guarded against the happening or event he later seeks to excuse, the neglect is not excusable." *In re L.D.M.*, 2021-Ohio-1853, ¶ 41(12th Dist.).

**{¶ 43}** Luikart claims his failure to attend the full hearing on February 14, 2024, constitutes excusable neglect because (1) neither Luikart nor his counsel attended the hearing; (2) Luikart hired counsel for the hearing; and (3) his counsel testified he would "not just not show up at hearings if he knew of their existence." We are not persuaded by Luikart's arguments.

**{¶ 44}** At the hearing on Luikart's motion to reopen, Luikart provided several reasons for missing the CSPO hearing. First, Luikart and his former counsel, Scranton, claimed Luikart was confused regarding his ongoing cases and what his obligations were in each case. Notwithstanding this confusion, both Luikart and Scranton acknowledged that Luikart was properly served with notice of the CSPO hearing and had retained counsel to assist in the matter prior to the hearing.

**{¶ 45}** Luikart later claimed he missed the CSPO hearing because he was admitted to the hospital that morning for low blood sugar. Luikart stated he was admitted to the hospital for approximately two hours before attending his Municipal Court hearing. Luikart submitted documentation from the hospital stating he received treatment on February 14, 2024. However, that documentation did not provide the time he was treated.

**{¶ 46}** Our review of the record shows that Luikart had both knowledge and actual notice of the CSPO hearing, rendering his failure to appear well within his control. Although Luikart was treated at the hospital the day of the hearing, he failed to establish the timing of that treatment. Luikart similarly failed to provide any reasoning for his failure to timely inform the court of his expected absence. As such, when considering the record properly before this court, we find Luikart failed to demonstrate any unique circumstances sufficient to support a finding of excusable neglect. *See J.C. v. A.M.*, 2024-Ohio-5664, ¶ 23-25 (10th Dist.).

**{¶ 47}** Accordingly, we find the trial court did not exhibit an unreasonable, arbitrary, or unconscionable attitude and did not abuse its discretion when it denied Luikart's Civ.R. 60(B) motion.

**{¶ 48}** Luikart's second assignment of error is overruled.

**{¶ 49}** Judgment affirmed.

PIPER , P.J., and M. POWELL, J., concur.

- 13 -

- 14 -

_____
# J U D G M E N T   E N T R Y

The assignments of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Fayette County Court of Common Pleas for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

/s/ Robin N. Piper, Presiding Judge

/s/ Mike Powell, Judge

/s/ Melena S. Siebert, Judge